PEOPLE v TILLEY

Docket No. 58985. Argued January 3, 1978 (Calendar No. 19).—Decided January 10, 1979. Rehearing denied 406 Mich 1118. Levin, J., would grant rehearing to consider those issues as to which leave to appeal was granted by this court but not addressed by it in its opinion on the case.

Dennis E. Tilley was convicted by a jury in Wayne Circuit Court, James N. Canham, J., of first-degree murder. Defendant argues that there was insufficient evidence of premeditation or deliberation to support the charge of first-degree murder. The decedent, Paul Mickel, an off-duty deputy sheriff, was in an altercation at a restaurant parking lot with defendant Tilley and his codefendant David Moss, and after a struggle the defendant gained possession of Mickel's revolver. He argues that he began firing at Mickel without being in a cool, reflective state of mind. The Court of Appeals, D. E. Holbrook, P.J., and J. H. Gillis, J. (M. J. Kelly, J., concurring), affirmed (Docket Nos. 19796, 20315). Defendant appeals. *Held:*

1. An appellate court, in determining whether the jury could properly find the defendant guilty of first-degree murder, must examine the totality of the circumstances to determine whether there is evidence to support the findings by the trier of fact of premeditation and deliberation.

2. When a homicide occurs during a sudden affray, the Court has found that it would be a perversion of terms to apply the term "deliberate" to any act which is done on a sudden impulse. In the instant case the testimony presented allowed the jury to find that the fighting had ended when defendant obtained possession of the victim's revolver or when Mickel began retreating into the restaurant. There was also testimony that defendant and his companion Moss were in control of the situation, holding Mickel, before the defendant started shooting.

3. The minimum time, between initial homicidal intent and

REFERENCES FOR POINTS IN HEADNOTES
[1] 40 Am Jur 2d, Homicide §§ 439, 559.
[2-4] 40 Am Jur 2d, Homicide § 52.
[5] 40 Am Jur 2d, Homicide §§ 52, 439.
[6] 5 Am Jur 2d, Appeal and Error §§ 601, 602.
   21 Am Jur 2d, Criminal Law § 449.
[7] 21 Am Jur 2d, Homicide § 45.
[8] 21 Am Jur 2d, Homicide § 439.

ultimate action, required to premeditate and deliberate first-degree murder is not exactly determinable, but the interval should be long enough to afford a reasonable man time to subject the nature of his response to a "second look". Testimony in this case estimated the time between the defendant securing possession of the revolver and firing the first volley of shots as Mickel retreated as one second to one minute. There was also testimony that defendant followed Mickel, who was retreating into the restaurant, after the first volley of shots, which created an additional lapse between the first and second volleys. Witnesses also testified that after following Mickel through the doorway of the restaurant the defendant had to raise the revolver before firing the second volley of shots. The jury had evidence to support the conclusion that the defendant had ample opportunity to premeditate and deliberate.

4. In addition, there was testimony that the defendant was holding the revolver with two hands when he pointed it at Mickel which also indicates premeditation and deliberation. There was evidence in this case sufficient to support the verdict of the jury.

Affirmed.

Justice Levin, joined by Justice Kavanagh, dissented.

1. Where a defendant is bound over on a charge of first-degree murder, deficiencies in the evidence at preliminary examination cannot be supplemented by evidence at the trial, and where the defendant has preserved the issue of insufficiency of the evidence at the preliminary examination by a motion to reduce the charge or a motion to quash, the conviction cannot stand. There was sufficient evidence to bind Tilley over on a charge of second-degree murder, and the prosecution need not be dismissed, but the conviction should be reduced to second-degree murder.

2. Five witnesses testified at the preliminary examination; the witness whose testimony at trial supported an inference of premeditation and deliberation did not testify at the preliminary examination. While there was testimony at the preliminary examination that there was a pause between a first set of three shots and a second set of shots, there was no indication of how long this pause might have been. There was no testimony of the time lapse between the defendant's recovery of the revolver and commencement of the shooting. This is crucial because the Court has recognized that a wilful, deliberate, premeditated design to take life an instant before the act. The

deficiencies in the proofs at preliminary examination cannot be supplemented at trial.

70 Mich App 18; 245 NW2d 389 (1976) affirmed.

OPINION OF THE COURT

1. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — APPEAL AND ERROR.

An appellate court, in determining whether a jury could properly find the defendant guilty of first-degree murder, must examine the totality of the circumstances to determine whether there is evidence to support the findings by the trier of fact of premeditation and deliberation (MCL 750.316; MSA 28.548).

2. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — WORDS AND PHRASES.

It would be a perversion of terms to apply the term "deliberate" to any act which is done on a sudden impulse, for example when a homicide occurs during a sudden affray (MCL 750.316; MSA 28.548).

3. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — WORDS AND PHRASES.

The minimum interval, between initial homicidal intent and ultimate action, required to premeditate and deliberate first-degree murder is not exactly determinable, but the interval should be long enough to afford a reasonable man time to subject the nature of his response to a "second look" (MCL 750.316; MSA 28.548).

4. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — WORDS AND PHRASES.

Testimony that a defendant accused of first-degree murder held a revolver with two hands when he pointed it at the victim and shot him supports a finding by the jury of premeditation and deliberation (MCL 750.316; MSA 28.548).

5. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — SUFFI-CIENCY OF EVIDENCE.

There was sufficient evidence to support a verdict of guilty of first-degree murder where there was testimony which supported a finding that fighting between the defendant and the victim had ended when the defendant obtained possession of the victim's revolver or when the victim began retreating; that the defendant and his companion were in control of the situation, holding the victim, before the defendant started shooting; that the estimated time between the defendant securing posses-

sion of the victim's revolver and firing the first volley of shots as the victim retreated was from one second to one minute; that there was an additional lapse of time as the defendant followed the retreating victim into a building before the defendant raised the revolver again to fire a second volley of shots; and that the defendant was holding the revolver with two hands when he shot the victim (MCL 750.316; MSA 28.548).

DISSENTING OPINION BY LEVIN, J.

6. CRIMINAL LAW — PRELIMINARY EXAMINATION — EVIDENCE — SUFFICIENCY.

*Deficiencies in the evidence at preliminary examination cannot be supplemented by evidence at the trial; where the defendant has so preserved the issue of insufficiency of the evidence at the preliminary examination, a conviction cannot stand.*

7. HOMICIDE — FIRST-DEGREE MURDER — SECOND-DEGREE MURDER — PRELIMINARY EXAMINATION.

*A prosecution against a defendant who was charged with first-degree murder need not necessarily be dismissed because the evidence presented at the preliminary examination was insufficient to bind him over for trial on that charge; however, the defendant's conviction of first-degree murder should be reduced to second-degree murder where there was sufficient evidence presented at the preliminary examination to bind him over for trial on a charge of second-degree murder (MCL 750.316, 750.317; MSA 28.548, 28.549).*

8. HOMICIDE — FIRST-DEGREE MURDER — PREMEDITATION — EVIDENCE.

*There was not sufficient testimony presented at a preliminary examination to bind the defendant over for trial on a charge of first-degree murder where there was no testimony of the time lapse between the time when the defendant obtained possession of a gun and the commencement of the shooting, and the testimony concerning a pause between a first set of three shots and a second set of shots did not indicate whether the pause was longer than a split second; a wilful, deliberate, premeditated design to take life cannot be formed an instant before the act (MCL 750.316; MSA 28.548).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Prin-

cipal Attorney, Appeals, and *Craig L. John,* Assistant Prosecuting Attorney, for the people.

*F. Lee Bailey, Kenneth J. Fishman,* and *Nederlander, Dodge & McCauley, P.C.* (by *Ellen H. Witt),* for defendant.

## INTRODUCTION

WILLIAMS, J. The principal issue in this case was whether the jury could properly find first-degree murder, premeditation and deliberation, from the evidence presented. The defendant, Mr. Tilley, was charged with the first-degree murder of Mr. Mickel, an off-duty sheriff's deputy. The shooting followed an altercation outside a restaurant. During the struggle the defendant obtained possession of Mickel's gun. Five or six shots were fired by the defendant at Mickel, some in the parking lot, and others in the vestibule of the restaurant where the victim had retreated.

The defendant was convicted by a jury of first-degree murder. The Court of Appeals affirmed. 70 Mich App 18; 245 NW2d 389 (1976). We granted leave to appeal. We hold there was evidence upon which the trier of fact, the jury, could have based its verdict.

We affirm.

## FACTS

On Sunday, November 29, 1973, at approximately 2:30 a.m., the defendant entered the Nugget Restaurant. A friend of the defendant's, Mr. Moss, entered the restaurant and started an argument with the victim. At the time Mr. Mickel was

wearing civilian clothes. Moss and Mickel left the
restaurant followed by Tilley and some other res-
taurant patrons. Once they were outside, the argu-
ment between Mickel and Moss continued. Moss
pulled a gun from his pocket, which Mickel
knocked to the ground. Mickel picked up Moss's
gun and drew his own revolver; he placed Moss
under arrest and identified himself as a Wayne
County Sheriff's Deputy.

The crowd which had gathered questioned Mick-
el's authority. Mr. Toth, a restaurant bouncer,
approached both men. Mickel showed Toth his
badge and said he had everything under control.
Toth went back into the restaurant and, as re-
quested by Mickel, called the local police. The
crowd continued to ask for Mickel's identification.
Tilley began speaking to Mickel in a taunting
manner. This distraction enabled Moss to turn and
jump Mickel, who then struck Moss with his gun
hand. The three men, Tilley, Moss and Mickel,
began to struggle, during which time Tilley ob-
tained possession of Mickel's gun. One witness
testified that after Tilley gained possession of the
gun both Tilley and Moss held Mickel.

At this point Mickel began to back towards the
restaurant. Tilley began shooting. Five or six shots
were fired at Mickel. Some were fired in the park-
ing lot, and others in the vestibule of the restau-
rant where Mickel had retreated with Tilley in
pursuit.

The testimony of the witnesses varied as to the
time lapse between Tilley obtaining possession of
the gun and the first shots. There was also varia-
tion in the testimony as to the time lapse between
the first and the final shots. The variance ranged
from one second to one minute for each of the two
intervals. There was also testimony presented that

the defendant held the gun with two hands while pointing it at Mickel during the first volley, that he dropped his hands while running after Mickel and had to raise the gun in order to fire the final volley of shots.

## Factual Analysis

We examine the totality of the circumstances to determine whether there is evidence to support the findings of the trier of fact; in particular whether the findings of premeditation and deliberation are supported.

In *People v Wolf,* 95 Mich 625; 55 NW 357 (1893), this Court did examine the circumstances surrounding a homicide in determining whether premeditation and deliberation were present. In *People v Bauman,* 332 Mich 198; 50 NW2d 757 (1952), the same type of factual analysis was reaffirmed. The majority of decisions by this Court involving first-degree murder have been based on such factual analyses of the totality of the circumstances.

A careful review of the testimony in this case persuades us that there was evidence to support the jury's verdict. For purposes of illustration we list several factors surrounding the homicide which support the jury's verdict. We do not intend to imply that any one particular factor is essential to a finding of premeditation and deliberation, but that only by reviewing the circumstances as presented through the testimony of the witnesses can a determination be made.

First, we realize when a homicide occurs during a sudden affray this Court has found that it would be "a perversion of terms to apply the term deliberate to any act which is done on a sudden im-

pulse", *Nye v People,* 35 Mich 16, 19 (1876). In this case the testimony presented allows the jury to find that the fighting had ended when (1) Tilley obtained possession of the gun or (2) Mickel began retreating. There was also testimony that Tilley and Moss were in control of the situation, holding Mickel, before Tilley started shooting.

A second consideration is the time required to premeditate and deliberate. In *People v Vail,* 393 Mich 460; 227 NW2d 535 (1975), this Court said:

"While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.' " *Vail,* 469.[1]

There was an interval between Tilley securing possession of the gun and the first volley of shots as Mickel was retreating. The testimony presented various estimates of the time lapse ranging from one second to one minute.

Third, there was testimony that Tilley followed Mickel after the first volley of shots as Mickel continued retreating, creating a time lapse between the first and second volley. Witnesses also testified that after following Mickel through the doorway of the restaurant Tilley had to raise the gun before firing the second volley of shots.

We recognize that "[s]ome time span between initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation", *People v Hoffmeister,* 394 Mich 155, 161; 229 NW2d 305 (1975). The jury had evidence to sup-

---

[1] While the jury charge was not an issue in this case, it is a fact that the trial court charged the jury that "the interval between initial thought and ultimate action should be law *[sic]* enough to afford a reasonable man time to subject the nature of his response to a 'second look' ".

port the conclusion that the defendant had ample opportunity to premeditate and deliberate.

In addition, there was testimony of another kind indicating premeditation and deliberation. It was that Tilley was holding the gun with two hands when he pointed it at Mickel.

## Conclusion

Based on the facts of this case presented through the testimony of the witnesses, there was evidence to support the verdict of the jury.

We affirm the conviction of the defendant of first-degree murder.

Coleman, C.J., and Fitzgerald, Ryan, and Blair Moody, Jr., JJ., concurred with Williams, J.

Levin, J. *(dissenting).* The Court states, largely on the basis of Susan Primm's testimony, that the jury could conclude that Tilley and Moss held Mickel and had the situation under control and during that period Tilley had an opportunity to premeditate and deliberate.

Primm did not testify at the preliminary examination. The one witness who had observed the shooting did not testify to the length of time that elapsed between Tilley's recovery of the gun and the commencement of the shooting. It appears from his testimony that the action was continuous.

At the conclusion of the preliminary examination, Tilley's counsel stated that the evidence was insufficient to bind him over on a charge of first-degree murder. After he was bound over on that charge, a motion to quash was made in the circuit court on the same ground and was denied.

Deficiencies in the evidence at preliminary ex-

amination cannot be supplemented by evidence at the trial.[1] Where the defendant has so preserved the issue of insufficiency of the evidence at the preliminary examination, a conviction cannot stand.

Since there was sufficient evidence to bind Tilley over on a charge of second-degree murder, the prosecution need not be dismissed. His conviction should be reduced to second-degree murder.[2]

## I

The Court states: "One witness testified that after Tilley gained possession of the gun both Tilley and Moss held Mickel." "There was also testimony that Tilley and Moss were in control of the situation, holding Mickel, before Tilley started shooting." Those statements are apparently based on Primm's testimony that Tilley and Moss spread-eagled and held Mickel before Tilley started shooting. Primm was the sole witness of 23 who claimed that Tilley and Moss held and controlled Mickel before the shooting began.[3] Her testimony on this point was at odds with every other eye-witness account, and some of her other

---

[1] The Court indicates that a combination of factors supports its decisions, but at least three factors on which the Court bases its decision were not presented at the preliminary examination: (1) there was no testimony by Primm or any other witness that Moss and Tilley held and controlled Mickel before he was shot; (2) no evidence was presented regarding the length of time between Tilley's recovery of the gun and the commencement of shooting or the length of the pause between the first set of three shots and the second set and there was no evidence that Tilley had to raise the gun before firing the second set of shots; (3) there was no evidence that Tilley held the gun with two hands when he pointed it at Mickel.

[2] See *People v Oster,* 67 Mich App 490, 499; 241 NW2d 260 (1976).

[3] The trial judge said: "Your reliance upon, not your reliance but the people's reliance, the only testimony they can rely upon is that of Susan Primm for the time where the defendant may have been or the deceased would be in the dominance of the defendant. At that time the deliberation and the premeditation, the jury may infer may have taken place."

statements also were significantly different from testimony of other witnesses.[4]

Be that as it may, Tilley raised and preserved the issue whether the trial judge erred in failing to grant his motion to quash or reduce the charge. In *People v Kennedy,* 9 Mich App 346, 348-349; 155 NW2d 855 (1968), the Court declared:

"Thus false swearing is essential to the crime of perjury.

"To base a charge of perjury on an examination at which no evidence of false swearing is adduced and to bind over a defendant for trial on such charge is manifestly an abuse of discretion. As the court said in *People v White,* 276 Mich 29, 31, 32; 267 NW 777 (1936):

" 'The failure of the people to sustain their charge may be unfortunate, *in view of the subsequent testimony at the trial,* but it would be more unfortunate to upset established and well understood rules of law.'

"See, also, *People v Asta,* 337 Mich 590; 60 NW2d 472 (1953).

"For this reason the conviction must be set aside and the information quashed." (Emphasis supplied.)

Five witnesses were called at the preliminary examination; Primm was not among them.

Timothy Maloney testified that after the initial fight between Moss and Mickel, Mickel put *Moss* in a spread-eagled position with his hands behind his head. Mickel then identified himself as a police

---

[4] Specifically, Primm testified that she left her car and stood by the gun after Tilley threw it in the air while running away. This version was specifically contradicted by Baglama and Officer Milewski. Baglama testified that after the shooting he attempted to trip Tilley as he was running away. Baglama saw the gun leave Tilley's hand and he immediately walked to the gun, placed it between his shoes and subsequently got the attention of Milewski who retrieved the gun. Baglama testified that at no time did Primm or any other person come over and stand by the gun. Milewski testified that when he retrieved the gun there was a man standing alone by it.

officer to Art Toth, one of the restaurant's bouncers. Toth reentered the restaurant and Moss and Mickel remained in their positions for several minutes. Moss then turned around and Mickel grabbed him and began to pistol-whip him. Both Mickel and Moss fell to the ground and continued to struggle. Tilley then joined the struggle for the gun. The gun went out of Mickel's hands. Maloney at first testified that he did not then see who, if anybody, had the gun. After an attempt by the prosecutor to refresh Maloney's memory, Maloney somewhat modified his statement. "Like I stated, it's vague in my recollection. It appears that he [Tilley] picked up the gun; but as I say, I was in the process of turning. There was quite a confusion at the time." At that point, Maloney turned and went to the other side of the restaurant, sat down, and heard three shots, a pause, and three more shots.

Aaron Ormaian, a bouncer at the restaurant, testified that after Mickel had disarmed Moss, he spread-eagled him against the car, pressed his gun against Moss's head, and told him that he was under arrest. Mickel started to frisk Moss. Tilley came over and asked Mickel what he was doing and why. Mickel turned around partially to talk to Tilley; Moss reached around and tried to grab Mickel. Moss and Mickel then struggled for a while. Mickel hit Moss on the head with the gun about three times and Moss staggered a bit. *Then* Tilley jumped into the struggle and the three men struggled for about a minute. Mickel's gun left his hand and fell to the ground; all three men were on their knees. Tilley picked up the gun. Mickel started to run and screamed, "Oh, no, oh, no", and Tilley shot him three times from about ten feet away. Mickel stumbled into the little hallway

leading into the restaurant. Tilley followed him in and fired three more shots.

Christine Deutschman heard four shots fired one after another, but witnessed nothing after Mickel had Moss spread-eagled against the car. John Baglama heard four or five shots. Dennis Milewski was a police officer who was called to the scene.

## II

It thus appears that when Moss and Mickel began to struggle again Tilley did not immediately enter the fight. The testimony of both Maloney and Ormaian was that Tilley joined the struggle only *after* Mickel had begun to hit Moss on the head with the gun.

While there was testimony that there was a pause between the first set of three shots and the second set there was no indication of how long this pause might have been. It could have been a split second. There was no testimony of the time lapse between Tilley's recovery of the gun and commencement of the shooting. This is crucial because this Court has recognized that a wilful, deliberate, premeditated design to take life cannot be formed an instant before the act, *Nye v People,* 35 Mich 16 (1876); *People v Vail,* 393 Mich 460, 468; 227 NW2d 535 (1975).

The deficiencies in the proofs cannot be supplemented by Primm's "subsequent testimony at the trial". *People v Kennedy, supra.*

I would reduce Tilley's conviction from first-degree murder to second-degree murder and remand for resentencing.

KAVANAGH, J., concurred with LEVIN, J.