PEOPLE v CONKLIN

Docket No. 48904. Submitted February 11, 1981, at Detroit.—Decided
   July 19, 1982.

   John W. Conklin, Jr., was convicted in Monroe Circuit Court of
   first-degree murder and sentenced to life imprisonment, Daniel
   L. Sullivan, J. The Court of Appeals, in an unpublished per
   curiam opinion, with V.J. BRENNAN, J., dissenting, re-
   versed and remanded the matter to the trial court for entry
   of a judgment of conviction on the reduced charge of second-
   degree murder with an option afforded the prosecutor to retry
   defendant for first-degree murder. The Court held that there
   was insufficient evidence of premeditation and deliberation
   independent of defendant's confession to support the first-de-
   gree murder conviction. The people filed an application for
   rehearing, which the Court of Appeals granted. On rehearing,
   held:

   1. The evidence and inferences to be drawn from it clearly
   establish the requisite corpus delicti, independent of the defen-
   dant's confession, sufficient to support an inference of premedi-
   tation and deliberation, and there was sufficient evidence of
   premeditation and deliberation to support defendant's first-de-
   gree murder conviction.

   2. The trial court did not err in admitting defendant's confes-
   sion into evidence.

   The original, unpublished opinion of the Court of Appeals is
   rescinded and the defendant's conviction for first-degree mur-
   der is reinstated.

1. CRIMINAL LAW — EVIDENCE — CORPUS DELICTI.
   The corpus delicti of a crime must be established by evidence
   other than a confession or admission of the accused.

REFERENCES FOR POINTS IN HEADNOTES
[1] 30 Am Jur 2d, Evidence §§ 149, 1140, 1142.
[2] 30 Am Jur 2d, Evidence §§ 1140, 1141, 1173.
[3] 30 Am Jur 2d, Evidence § 1173.
[4-7] 40 Am Jur 2d, Homicide § 52.
[5] 40 Am Jur 2d, Homicide §§ 263-266, 274.
[6] 40 Am Jur 2d, Homicide §§ 254, 439.
[7] 40 Am Jur 2d, Homicide § 264.

2. CRIMINAL LAW — EVIDENCE — CORPUS DELICTI.

 The prosecution must introduce evidence from which a trier of fact reasonably may find that acts constituting all the essential elements of a crime have been committed and that someone's criminality was responsible for the commission of those acts in order to establish the corpus delicti of the crime.

3. CRIMINAL LAW — EVIDENCE — CORPUS DELICTI.

 The corpus delicti of a crime does not have to be proven beyond a reasonable doubt to support a defendant's conviction for the crime.

4. HOMICIDE — PREMEDITATION — DELIBERATION.

 Premeditation and deliberation characterize a thought process undisturbed by hot blood; to find premeditation and deliberation, there must be a lapse of time between the initial criminal intent and ultimate action which would be long enough to afford a reasonable man time to subject the nature of his response to a "second look"; a sufficient time lapse to provide an opportunity for a "second look" may be merely seconds, or minutes, or hours, or more, depending on the totality of the circumstances surrounding the killing.

5. HOMICIDE — EVIDENCE — PREMEDITATION — DELIBERATION.

 Premeditation and deliberation may be indicated in a murder trial by, among other things: a prior relationship tending to show motive; a murder weapon acquired and positioned in preparation for homicide; evidence in the record supporting the inference that the killer transported the victim to a secluded location for illicit or criminal purpose; circumstances surrounding the killing suggesting premeditation and deliberation; and organized conduct subsequent to the killing suggesting the existence of a plan.

6. HOMICIDE — EVIDENCE — PREMEDITATION — DELIBERATION.

 Premeditation and deliberation need not be established in a murder trial by direct evidence; the appropriate state of mind may be inferred from all the facts and circumstances, but the inferences must have support in the record and cannot be arrived at by mere speculation.

7. HOMICIDE — BRUTALITY OF KILLING — PREMEDITATION — DELIBERATION.

 The brutality of a killing cannot in itself support a finding that the killer acted with premeditation and deliberation, but may be considered in determining whether premeditation and deliberation existed at the time of the killing.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Michael W. LaBeau,* Prosecuting Attorney, and *William D. Bond,* Assistant Prosecuting Attorney, for the people.

*Rolf E. Berg,* Assistant State Appellate Defender, for defendant on rehearing.

Before: M. J. KELLY, P.J., and V. J. BRENNAN and T. M. BURNS, JJ.

V. J. BRENNAN, J. We granted the people's application for rehearing in this cause to determine whether our original opinion incorrectly concluded that there was insufficient evidence of premeditation and deliberation, independent of the defendant's confession, to support defendant's first-degree murder conviction.

In the original opinion in this matter, the majority reversed the defendant's first-degree murder conviction and remanded to the trial court for entry of a judgment of conviction on the reduced charge of second-degree murder with an option afforded the prosecutor to retry defendant for first-degree murder. I dissented because I was convinced that there were enough facts for the trial court, sitting as the finder of fact, to conclude that there was sufficient evidence of premeditation and deliberation independent of the defendant's confession.

After considering the issue of whether there was sufficient evidence of premeditation and deliberation *aliunde* the defendant's confession, we reverse our original opinion and reinstate defendant's first-degree murder conviction.

It is the well-accepted general rule that the corpus delicti of a crime must be established by evidence other than a confession or admission of

the accused. In order to establish the corpus delicti of a crime, the prosecution must introduce evidence from which a trier of fact reasonably may find that acts constituting all the essential elements of the crime have been committed and that someone's criminality was responsible for the commission of those acts. *People v Hamp,* 110 Mich App 92, 96; 312 NW2d 175 (1981). The corpus delicti does not have to be proven beyond a reasonable doubt.

Premeditation and deliberation characterize a thought process undisturbed by hot blood. *People v Michael Johnson,* 105 Mich App 498, 505; 307 NW2d 357 (1981). To find premeditation and deliberation, there must be a lapse of time between the initial homicidal intent and ultimate action which would be long enough to afford a reasonable man time to subject the nature of his reponse to a "second look". *People v Tilley,* 405 Mich 38, 45; 273 NW2d 471 (1979). A sufficient time lapse to provide an opportunity for a "second look" may be merely seconds, or minutes, or hours, or more, dependent on the totality of the circumstances surrounding the killing. *People v Meier,* 47 Mich App 179, 191-192; 209 NW2d 311 (1973).

Evidence of the following can indicate that the defendant had an opportunity for a "second look":

1. A prior relationship tending to show motive;

2. A murder weapon acquired and positioned in preparation for homicide;

3. Evidence in the record supporting the inference that the killer transported the victim to a secluded location for illicit or criminal purpose;

4. Circumstances surrounding the killing suggesting premeditation and deliberation; and

5. Organized conduct subsequent to the killing suggesting the existence of a plan.

These factors are not exclusive.

Further, premeditation and deliberation need not be established by direct evidence. The appropriate state of mind may be inferred from all the facts and circumstances but the inferences must have support in the record and cannot be arrived at by mere speculation. *People v O'Brien,* 89 Mich App 704, 710; 282 NW2d 190 (1979).

Aside from defendant's confession, the evidence established that the victim's body was found by a detective in a cornfield. The body was clad only in a pair of jeans. The detective testified as to the condition of the body:

"The face * * * appeared to be smashed, and * * * it was very badly decomposed. The skull was exposed, and we could see that there was a section of the skull that had been knocked out.

* * *

"[W]hen we found the body, the * * * skull was completely exposed. Ah the skin had been beaten off the skull, and—and the skull laying there—there was quite a large hole knocked out of the skull."

A tire iron with the victim's shirt wrapped around it was lying about six inches from the victim's head. Hair and blood found on the tire iron were consistent with the victim's hair and blood.

The victim's car was discovered in a parking lot in the City of Monroe the day before the body was found. It "was covered with cornstalks, * * * leaves, grain, vines and mud, and appeared to have been driven through a cornfield or some other type of field". Inside the vehicle was a pair of ladies' shoes, a sock, several 8-track tapes, a pillow, and a purse. The purse had been opened and its contents were scattered about the car.

Also, small amounts of dried human blood were found inside the vehicle by the headrest on the front passenger side seat, the rearview mirror, the steering wheel and the center of the front seat.

The victim's mother testified that the last time that she saw the victim was one week before the body was found. The victim was wearing the shirt found wrapped around the tire iron.

A pathologist testified that there was "a large piece or pieces of bone broken out of the skull" and that the edges were "beveled", making it "quite apparent that there was an external blow probably with a blunt instrument" such as "a tire iron or club of some type". The "large defect" in the victim's skull was on the right, front side, near the forehead and temple, and was the "only evidence of violence" to the victim's body. Further, the pathologist testified that, given the nature of the fractures, it looked like there had been at least two, and possibly more, forceful blows.

The trial court found:

"The court does find that there was sufficient time for the defendant to subject his responses to a second look.

"The court finds, on considering the totality of the circumstances, that there was premeditation in this case, and that the defendant is guilty of first-degree murder.

"This, of course, is inferred from the circumstances, as I've indicated before, and in reaching that inference, the court has considered all of the circumstances, specifically, the severity of the wounds that the victim suffered; the weapon that was used, the tire iron being ah found adjacent to the body; the fact that the defendant would have had to have gotten the tire iron out of the car; the fact that the defendant had an opportunity to consider everything that he was going to do."

Although there was no evidence of a prior rela-

tionship between the parties, independent of the defendant's confession, we can infer from the totality of the circumstances that there was sufficient evidence of premeditation and deliberation to support defendant's first-degree murder conviction. The nature of the wounds suffered by the victim indicate a brutal killing. Even though "the brutality of a killing cannot in itself support a finding that the killer acted with premeditation and deliberation", *People v Hoffmeister,* 394 Mich 155, 159-160; 229 NW2d 305 (1975), it is one factor to consider, and it is not the only factor indicating premediation and deliberation that we can infer from the facts.

The victim was found in a cornfield. In *People v O'Brien, supra,* the Court cited the fact that the killing occurred in a field as one of the factors indicating premeditation and deliberation. Also, in *People v Gilbert,* 101 Mich App 459, 469; 300 NW2d 604 (1980), the Court noted that a subsequent attempt to conceal the body is indicative of premeditation and deliberation. Here, the proofs indicated that: (1) there was a small amount of blood on the front passenger side headrest; (2) there was also blood on the rearview mirror, the center of the front seat, and steering wheel; (3) the victim's wounds would have bled profusely; (4) the body was found in a cornfield that was three-tenths of a mile from a road and the body was located in a ravine that was not easily observable; and (5) the car was found in a parking lot in Monroe and was covered with cornstalks, leaves, grain, and mud. This evidence indicates that the victim was not murdered in the car or transported in the car after the murder as her wounds would have bled profusely and there was no large amount of blood in the car. However, since there

was blood on the front passenger seat headrest, the evidence indicated that the victim had been in the car after sustaining some kind of injury and was then transported to the cornfield where it is likely that the murder occurred. The condition of the car indicates that it was driven into the cornfield ˌand the body was left there in an effort to conceal it. The blood on the steering wheel, rearview mirror and front center seat indicates that the defendant took the car after the murder, left it in the parking lot and then fled.

Further evidence of premeditation and deliberation is the fact that the murder weapon was a tire iron. The victim's blood and hair were found on the tire iron which was wrapped in the victim's shirt and lying close to her head. Although there was no evidence that the tire iron was in the trunk of the car prior to the murder, thereby necessitating the defendant to first obtain it before using it as the murder weapon, we think that it is a reasonable assumption based on common sense. The trunk of a car is the usual place for keeping a tire iron. This fact was later confirmed by the confession.

The above evidence and inferences to be drawn from it clearly establish the requisite corpus delicti, *aliunde* the defendant's confession, sufficient to support an inference of premeditation and deliberation. We find no error on the part of the trial court in admitting the defendant's confession. The defendant voluntarily confessed to the following: (1) He knew the deceased since he had met her earlier that afternoon. (2) They drove in her car to a dirt road where the defendant says they willingly engaged in sex. This was followed by an argument, whereupon he hit her. She fell, hit her head, which began to bleed profusely, and she was

rendered unconscious. Defendant then drove her unconscious body to another lane, dragged her body out of the car and took the tire iron out of the trunk of the car. There now is the evidence of the tire iron being used by the defendant to bludgeon the deceased's skull. (3) Thereafter, defendant drove the deceased's car back to Monroe, parked it, and he fled from the crime.

The original opinion is rescinded and defendant's conviction for first-degree murder is reinstated.