# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DIEGO NELSON TRESVANT,

Defendant-Appellant.

UNPUBLISHED
December 16, 2014

No. 317654
Wayne Circuit Court
LC No. 12-000364-FC

Before: DONOFRIO, P.J., and FORT HOOD and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] his jury trial convictions of second-degree murder, MCL 750.317, possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm) (second offense), MCL 750.227b. Defendant was sentenced to 30 to 60 years' imprisonment for the second-degree murder conviction, two to five years' imprisonment for the felon-in-possession conviction, and five years' imprisonment for the felony-firearm (second offense) conviction. We affirm.

Defendant first argues that he is entitled to a new trial because there was insufficient evidence for the trial court to submit the charge of first-degree premeditated murder to the jury. We disagree.

This Court reviews de novo a defendant's claim of insufficient evidence. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012). This Court examines the evidence in the case "in a light most favorable to the prosecution" to determine "whether there was sufficient evidence to justify a rational trier of fact in finding that all the elements of the crime were proved beyond a reasonable doubt." *Id.* (citation omitted). This Court also reviews de novo a trial court's ruling on a motion for a directed verdict. *People v Parker*, 288 Mich App 500, 504; 795 NW2d 596 (2010).

---

[1] See *People v Tresvant*, unpublished order of the Court of Appeals, entered January 21, 2014 (Docket No. 317654).

First-degree premeditated murder is defined as "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MCL 750.316(1)(a). The prosecution must prove beyond a reasonable doubt that "the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011), quoting *People v Kelly*, 231 Mich App 627, 642; 588 NW2d 480 (1998). "Premeditation and deliberation require sufficient time to allow the defendant to take a second look." *Jackson*, 292 Mich App at 588 (citation and internal quotation marks omitted). The jury may infer premeditation and deliberation "from the circumstances surrounding the killing." *Kelly*, 231 Mich App at 642. "Minimal circumstantial evidence is sufficient to prove an actor's state of mind." *People v Ortiz*, 249 Mich App 297, 301; 642 NW2d 417 (2001). "Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995).

In *People v Tilley*, 405 Mich 38, 42-46; 273 NW2d 471 (1979), our Michigan Supreme Court held that there was sufficient evidence to support the defendant's first-degree premeditated murder conviction when the defendant obtained a gun during a physical fight and shot the victim. There was testimony presented at trial that the time lapse from when the defendant obtained the gun until he shot the victim ranged from one second to one minute. *Id.* at 43-44. The Court reasoned that there was evidence presented at trial that the fighting had ended before the defendant began to shoot and that the defendant had sufficient time to premeditate and deliberate on the homicide. *Id.* at 45-46. The Michigan Supreme Court also noted that there was testimony that the defendant had followed the victim while the victim retreated. *Id.* at 45.

In the current case, there was sufficient evidence for the trial court to submit the charge of first-degree premeditated murder to the jury. Defendant admitted in his statement to Police Officer Eric Kimble that he and the victim, Anthony Hicks, got into a physical altercation at the Temple Hotel. Defendant stated that he then ran out of the hotel after his girlfriend, Melissa Curtis, fired a gunshot. David Klinex and Reginald Coles were sitting on the porch of the hotel. Klinex witnessed Hicks and a black male, who was wearing a hat, running through the entrance of the hotel's parking lot on to Temple Street toward Woodward. Coles saw two men running to the left and a woman run to the right. Coles heard someone say, "I'm going to get you." In his statement to the police, defendant stated that Curtis handed him a gun after leaving the hotel. Defendant chased Hicks around the wall of the Temple Hotel and past the parking lot. Defendant aimed the gun at Hicks and shot one time. This evidence was sufficient for the jury to find premeditation and deliberation since defendant had sufficient time "to take a second look." Defendant's physical altercation with Hicks ended, he obtained a gun, and then he chased Hicks around the wall of the Temple Hotel and past the parking lot. See *Tilley*, 405 Mich at 42-46; *Kelly*, 231 Mich App at 642; *Anderson*, 209 Mich App at 537-538.

There was also sufficient evidence of a specific intent to kill. Defendant told Officer Kimble that his purpose in shooting at Hicks was "[t]o hit him." Although defendant did not admit that his purpose in shooting at Hicks was to kill him, defendant's intent to kill Hicks can be inferred from the circumstance of defendant getting into a physical altercation with Hicks, running after Hicks, and shooting Hicks with a gun. See *Ortiz*, 249 Mich App at 301. Therefore,

there were sufficient facts for the trial court to submit the charge of first-degree premeditated murder to the jury. See *Tilley*, 405 Mich at 42-46; *Anderson*, 209 Mich App at 537-538.

Moreover, even assuming there was insufficient evidence to submit the charge of first-degree premeditated murder to the jury, reversal would not be warranted. First, the Michigan Supreme Court has stated that "a defendant has no room to complain when he is acquitted of a charge that is improperly submitted to a jury, as long as the defendant is actually convicted of a charge that was properly submitted to the jury." *People v Graves*, 458 Mich 476, 486-487; 581 NW2d 229 (1998). Second, defendant's assertion that the jury improperly compromised in convicting him of second-degree murder lacks merit. A jury is presumed to follow the trial court's instruction not to compromise. *Id*. at 486. However, upon a showing that a charge was erroneously submitted to the jury, reversal of a defendant's conviction is warranted if there are "sufficiently persuasive indicia of jury compromise." *Id*. at 487-488. In *Graves*, the Michigan Supreme Court clarified that there may be sufficiently persuasive indicia of compromise when "1) logically irreconcilable verdicts are returned, or 2) there is clear record evidence of unresolved jury confusion, or 3) . . . where a defendant is convicted of the next-lesser offense after the improperly submitted greater offense." *Id*. at 488. In *People v Moorer*, 246 Mich App 680, 682-683; 635 NW2d 47 (2001), this Court held that any error in the trial court's decision to submit a first-degree murder charge to the jury was harmless because the defendant was acquitted of first-degree murder, and the defendant did not dispute the fact that there was sufficient evidence to support his second-degree murder conviction.

Defendant did not present sufficient indicia of jury compromise. The Michigan Supreme Court in *Graves* stated that the fact that a defendant is convicted of a next-lesser offense *may* indicate jury compromise. *Graves*, 458 Mich at 488. Therefore, reversal is not automatically warranted when a jury convicts a defendant of a next-lesser offense. See *id*. Instead, reversal is discretionary depending on whether the defendant presents sufficient indicia of jury compromise. See *id*. Here, the trial court instructed the jury not to compromise, and the jury is presumed to have followed this instruction. See *id.* at 486. Defendant does not challenge the sufficiency of the evidence to support his second-degree murder conviction. Defendant also does not explain how his second-degree murder conviction was the result of jury compromise. Therefore, even if the trial court erred in submitting the first-degree murder charge to the jury, reversal is not warranted. See *Graves*, 458 Mich at 486-487; *Moorer*, 246 Mich App at 682-683.

Defendant next argues that his confession was unconstitutionally obtained because he did not knowingly and intelligently waive his *Miranda*[2] rights or voluntarily confess to shooting Hicks. We disagree.

This Court reviews de novo a preserved challenge to whether a defendant knowingly, intelligently, and voluntarily waived his or her *Miranda* rights. *People v Gipson*, 287 Mich App 261, 264; 787 NW2d 126 (2010). This Court also reviews the issue of whether a confession was voluntary de novo. See *People v Sexton (After Remand)*, 461 Mich 746, 752; 609 NW2d 822 (2000). "But we review a trial court's factual findings for clear error and will affirm the trial

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

court's finding unless left with a definite and firm conviction that a mistake was made." *Gipson*, 287 Mich App at 264. "Deference is given to a trial court's assessment of the weight of the evidence and the credibility of the witnesses." *Id*.

"Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his or her Fifth Amendment rights." *Gipson*, 287 Mich App at 264, citing *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed2d 694 (1966). "A waiver is voluntary if it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Gipson*, 287 Mich App at 264-265. This Court will examine whether a waiver was voluntary based on the totality of the circumstances in the case, including "the duration of the defendant's detention and questioning; the age, education, intelligence, and experience of the defendant; whether there was unnecessary delay of the arraignment; the defendant's mental and physical state; whether the defendant was threatened or abused; and any promises of leniency." *Id*. at 265. "Whether a waiver was made knowingly and intelligently requires an inquiry into defendant's level of understanding, irrespective of police conduct." *Id*. A defendant only needs to understand the rights, not the consequences of a waiver. *Id*. "Intoxication from alcohol or other substances can affect the validity of a waiver, but is not dispositive." *Id*.

A defendant must also give the confession voluntarily, even after a valid waiver of his or her *Miranda* rights. See *People v Cipriano*, 431 Mich 315, 333-334; 429 NW2d 781 (1988). The standard to determine whether a confession was voluntary is a totality of the circumstances test, which examines whether "the confession is 'the product of an essentially free and unconstrained choice by its maker,' " and encompasses many of the factors listed above with regard to the voluntariness of a *Miranda* waiver. *Id*. at 333-334 (citation omitted).

Defendant voluntarily waived his *Miranda* rights and voluntarily confessed to shooting Hicks. Defendant testified that he had consumed four ecstasy tablets before going to the police station, but did not smoke as much marijuana as he ordinarily does. Defendant testified that the net effect of taking the two drugs together was to keep him "even." According to defendant, because he took more ecstasy and less marijuana than usual, defendant was very emotional. However, a heightened emotional state does not render a *Miranda* waiver or a confession involuntary. Although Officer Kimble did not ask defendant whether he was under the influence of drugs or alcohol, Officer Kimble looked for physical symptoms of drug and alcohol use as a common practice to determine whether a person is under the influence of narcotics. There was nothing about defendant's appearance or mannerisms that indicated to Officer Kimble that defendant was under the influence of narcotics or alcohol. In addition, there was no indication that Officer Kimble coerced or threatened defendant into waiving his *Miranda* rights or making the statement. Instead, defendant voluntarily went to the police station and made the statement. Officer Kimble also did not make any promises during the interview. Finally, defendant was 23 years old, spoke fluent English, and attended high school through the ninth grade. While drug use may affect the validity of a waiver or confession, it is not dispositive, and the record, aside from defendant's self-reported drug use, does not support defendant's assertion that his waiver or confession were involuntary. *Gipson*, 287 Mich App at 265. Accordingly, we hold that defendant voluntarily waived his *Miranda* rights and voluntarily confessed to shooting Hicks. See *Cipriano*, 431 Mich at 333-334; *Gipson*, 287 Mich App at 264-265.

In addition, defendant knowingly and intelligently waived his *Miranda* rights. Before defendant made the statement, Officer Kimble read defendant his *Miranda* rights, and defendant signed a notification of constitutional rights and a "*Miranda* Waiver Form." Defendant testified at a *Walker*[3] hearing that he was able to understand his constitutional rights in spite of the fact that he had consumed ecstasy and marijuana before going to the police station. Therefore, defendant knowingly and intelligently waived his *Miranda* rights. *Gipson*, 287 Mich App at 264-265. For the reasons stated above, defendant's statement was constitutionally obtained.

Affirmed.

/s/ Pat M. Donofrio
/s/ Karen M. Fort Hood
/s/ Douglas B. Shapiro

---

[3] See *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).