*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DALLAS DAVID WALKER,

Defendant-Appellant.

FOR PUBLICATION
November 14, 2019
9:05 a.m.

No. 343844
Grand Traverse Circuit Court
LC No. 17-012823-FC

Before: STEPHENS, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J.

Defendant, who was charged with open murder,[1] MCL 767.71, appeals as of right his jury convictions of second-degree murder, MCL 750.317, and concealing or tampering with evidence, MCL 750.483a(5)(a). The trial court sentenced defendant to 25 to 50 years' in prison for the murder conviction and 11 months in jail for the tampering with evidence conviction, to be served concurrently. We affirm.

## I. FACTS

Defendant was convicted of killing the victim, defendant's next-door neighbor, in the victim's home and then concealing or tampering with evidence related to the killing. There is no dispute that defendant killed the victim; rather, at issue in this case is the circumstances of the killing. The prosecution's theory was that defendant assaulted and killed the victim because defendant was angry that the victim's friendship and alcohol consumption with defendant's father had caused significant tension in defendant's parents' marriage. Defendant's theory of defense was that, after a night of drinking, the victim sexually assaulted him, causing defendant to react by striking the victim in the head in self-defense.

---

[1] The trial court instructed the jury on the offenses of first-degree premeditated murder, second-degree murder, voluntary manslaughter, and involuntary manslaughter.

The prosecution presented evidence that the victim often socialized with defendant's father, and that the two frequently consumed alcohol together. The victim was disabled from working because of a series of strokes, and witnesses described him as weak and slow. Defendant testified on his own behalf that the victim invited defendant over in the early morning. Defendant accepted the invitation, and after watching television for some time, the victim physically attacked defendant, held defendant down, attempted to pull defendant's pants and underwear off, and threatened to get a knife. Defendant testified that he punched the victim once, whereupon the victim fell to the floor, and defendant "instinctively" punched the victim two or three more times. Expert medical testimony established that the victim died from blunt-force injuries, including at least eight definitive areas of blunt-force trauma to his head.

After assaulting the victim, defendant returned to his home, changed clothes, and took a shower. Later that morning, the police found a garbage bag near the front door of defendant's home that contained a pair of shorts that appeared to have been stained with blood. In another garbage bag in defendant's bedroom the police found a sock that appeared to have been stained with blood and a sandal that matched another sandal that was found inside the victim's home. The blood on defendant's clothing matched the victim's DNA. As noted, the trial court's instructions to the jury included instructions on first-degree murder, second-degree murder, voluntary manslaughter, and involuntary manslaughter.

## II. SUFFICIENCY OF THE EVIDENCE

We review a challenge to the sufficiency of the evidence de novo. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). We must review the evidence in a light most favorable to the prosecution to determine whether the jury could have found each element of the charged crime proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of [a] crime," *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010), and "it does not matter that the evidence gives rise to multiple inferences or that an inference gives rise to further inferences." *People v Hardiman*, 466 Mich 417, 428, 646 NW2d 158 (2002). "[A] reviewing court is required to draw all reasonable inferences and make credibility determinations in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

### A. PREMEDITATED FIRST-DEGREE MURDER

Defendant first argues that he is entitled to a new trial because there was insufficient evidence to submit the charge of first-degree premeditated murder to the jury. Defendant further argues that even though the jury convicted him of only second-degree murder, the erroneous submission of the greater charge was not harmless because it likely caused the jury to compromise on a verdict of second-degree murder. We disagree.

First-degree premeditated murder is defined as "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MCL 750.316(1)(a). Defendant argues that there was insufficient evidence that he committed a deliberate and premeditated killing to submit the first-degree murder charge to the jury. We disagree.

At common law, a killing constituted murder if it was done with malice aforethought. See *People v Mesik (On Reconsideration)*, 285 Mich App 535, 543-546; 775 NW2d 857 (2009). Common law murder evolved into statutory second-degree murder. See *People v Hansen*, 368 Mich 344, 350-351; 118 NW2d 422 (1962). First-degree premeditated murder is only distinguished from second-degree murder by the element of premeditation. *People v Carter*, 395 Mich 434, 437-438; 236 NW2d 500 (1975). Premeditation is not statutorily defined and cannot be evaluated in "a rigid and mechanical" manner. *People v Oros*, 502 Mich 229, 240-244; 917 NW2d 559 (2018); see also *People v Tilley*, 405 Mich 38, 44-46; 273 NW2d 471 (1979). Premeditation cannot be found where a defendant acts "on a sudden impulse." *Tilley*, 405 Mich at 44 (quotation omitted). The brutality and violence of a killing does not, by itself, show premeditation. *People v Hoffmeister*, 394 Mich 155, 159-160; 229 NW2d 305 (1975). However, premeditation may be established by circumstantial evidence tending to show that a defendant had an opportunity to think about, evaluate, or take a "second look" at their actions. *Oros*, 502 Mich at 240-244. The opportunity must be adequate, but it need not be long. *Id*. "Premeditation may be established through evidence of the following factors: (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995).

Although the jury chose not to find that defendant acted with premeditation or deliberation, there was sufficient evidence for the trial court to submit the charge of first-degree premeditated murder to the jury. The prosecutor presented substantial evidence that the victim's prior strokes had rendered him frail and slow. This evidence contradicted defendant's testimony that the victim was physically able to commit a prolonged attack on defendant before defendant was able to escape and punch the victim. Defendant sustained no injury during the alleged struggle. In contrast, according to the medical examiner, the victim had apparent defensive wounds on his arms and hands in addition to multiple injuries to his face and head. Defendant admitted that he struck the victim, claiming that he hit the victim after the victim allegedly tried to pull defendant's pants down and assault him. Defendant stated that after he punched the victim once in the face, the victim fell back, hit a table, and then fell face down onto the floor. However, the medical examiner's testimony did not support defendant's claim that the trauma to the victim's eyes came from a blow to the victim's nose or that falling face-first would have caused all of the victim's injuries. Defendant also admitted that he punched the victim two or three more times as the victim lay prone. Defendant stated that the later blows were "instinctual," but defendant's version of the killing does not explain why the victim would have defensive wounds or why defendant had bruising on his elbows as well as his fists.

Taken together and viewed in a light most favorable to the prosecution, the evidence and defendant's testimony supported a finding that defendant either (1) decided to beat the victim to death, or (2) had the opportunity to take a "second look" while he continued to beat the victim as the victim lay unconscious on the floor. Defendant's claim that he was provoked and sexually assaulted is contradicted by the evidence of the victim's general frailty, that the victim had never acted sexually or physically aggressive with anyone before, that the victim had never previously

expressed a sexual interest in men and in fact had expressed homophobia, the medical examiner's testimony, and the absence of signs of a struggle.[2]

Moreover, the jury could have believed parts of defendant's account, but still found that his testimony and the extent of the victim's injuries supported a finding that defendant knocked the victim out after the first punch, causing the victim to fall face down on the floor, rendering him helpless. See *People v Howard*, 50 Mich 239, 242-243; 15 NW 101 (1883). Thus, the jury was not obligated to accept defendant's testimony, but rather was only precluded from speculating. *People v Bailey*, 451 Mich 657, 673-675, 681-682; 549 NW2d 325 (1996). The jury could have found that the victim was no longer within defendant's immediate reach after falling to the floor, which would have afforded defendant with an opportunity to take a "second look" before continuing to strike the then-helpless victim. Therefore, viewed in the light most favorable to the prosecution, the evidence was sufficient to support submitting the charge of first-degree premeditated murder to the jury. Because the trial court did not err in submitting the charge to the jury, we need not consider defendant's argument that any error was not harmless.[3]

## B. CONCEALING OR TAMPERING WITH EVIDENCE

Defendant next argues that the evidence was insufficient to support his conviction of concealing or tampering with evidence. We disagree.

MCL 750.483a(5)(a) provides that "[a] person shall not . . . [k]nowingly and intentionally remove, alter, conceal, destroy, or otherwise tamper with evidence to be offered in a present or future official proceeding." The term "official proceeding" is defined as

> a proceeding heard before a legislative, judicial, administrative, or other governmental agency or official authorized to hear evidence under oath, including a referee, prosecuting attorney, hearing examiner, commissioner, notary, or other person taking testimony or deposition in that proceeding. [MCL 750.483a(11)(a).]

The factual basis for defendant's conviction was his alleged concealment of several articles of clothing that he was wearing when he killed the victim. Testimony was presented that after the killing, defendant returned to his home, removed his clothing, including a sandal that matched

---

[2] Although the victim's DNA was found on the waistband of defendant's shorts and underwear, defendant had a significant amount of the victim's blood on him after the killing, and a forensic scientist testified that a person could get DNA from another person on their own clothing if they touched the other person and then touched their own clothing.

[3] In any event, because jurors are presumed to follow their instructions, acquittal of an improperly submitted charge generally cures the erroneous submission. *People v Graves*, 458 Mich 476, 486-487; 581 NW2d 229 (1998). Defendant argues that our Supreme Court wrongly decided *Graves*, but we are bound to follow our Supreme Court's decisions. *Associated Builders & Contractors v Lansing*, 499 Mich 177, 191; 880 NW2d 765 (2016).

another sandal found in the victim's home, and placed these items in garbage bags for disposal. The police found the articles in garbage bags in defendant's home after the killing. The jury could reasonably find from this evidence that defendant knew that his clothing could connect him to the victim's death, and that he placed the items in garbage bags intending to dispose of and conceal them from discovery by authorities.

Defendant first argues that he cannot have concealed or tampered with evidence under the statute, because no official proceeding had commenced when he acted. A "proceeding" under MCL 750.483a(11)(a) means "the entirety of a lawsuit, from its commencement to its conclusion." *People v Kissner*, 292 Mich App 526, 537; 808 NW2d 522 (2011). Importantly, MCL 750.483a(5)(a) specifically includes *future* proceedings. The word "future" is undefined in the statute and is not a term of art, so we will give the word its plain and ordinary meaning. *Kissner*, 292 Mich App at 536. The word "future" means, in relevant part, something that is "going to happen." *Merriam-Webster's Collegiate Dictionary* (11ᵗʰ ed). A proceeding that is "going to happen" has necessarily not yet commenced. The statute therefore unambiguously encompasses proceedings that have not yet begun. We therefore reject defendant's argument that he cannot have concealed or tampered with evidence to be offered in a proceeding on the grounds that no such proceeding was yet pending.

Defendant next argues that the prosecution was required to prove that defendant knew the items of evidence at issue would be offered in an official proceeding. We accept for purposes of this appeal, although we need not decide, that the word "knowingly" in the statute likely includes knowledge of an official proceeding. See *Rehaif v United States*, 588 US ___; 139 S Ct 2191, 2194-2197; 204 L Ed 2d 594 (2019). Nevertheless, state of mind may be proved with "[m]inimal circumstantial evidence." *People v Ortiz*, 249 Mich App 297, 301; 642 NW2d 417 (2001). It is incredible that any person would believe that a violent killing would *not* certainly be the eventual subject of an official proceeding. Given the evidence that defendant's clothing was soaked with blood that contained the victim's DNA, the jury could reasonably find that defendant was aware that the clothing would connect him to the victim's beating death, and that he acted to conceal or otherwise tamper with this evidence knowing that it would be offered in a future criminal proceeding. Viewed in the light most favorable to the prosecution, the evidence was sufficient to allow the jury to find that defendant "[k]nowingly and intentionally . . . conceal[ed] . . . or otherwise tamper[ed] with evidence to be offered in a . . . future official proceeding." Therefore, we reject defendant's argument that the evidence was insufficient to support his conviction.

## III. OV 7

Defendant finally argues that the trial court erred by assessing 50 points for offense variable (OV) 7 of the sentencing guidelines. We disagree.

When reviewing a trial court's scoring decision, "[t]he circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

MCL 777.37 governs OV 7 and provides that 50 points should be scored if "A victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." Our Supreme Court has recognized that OV 7 provides four alternative grounds for assessing 50 points under OV 7. *Hardy*, 494 Mich at 441. Thus, the "similarly egregious conduct" clause specifically requires "that this conduct must be similarly egregious to sadism, torture, or excessive brutality." *People v Rodriguez*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 338914, slip op at p 4). However, the "similarly egregious conduct" clause is a discrete alternative to conduct that does constitute sadism, torture, or excessive brutality. In other words, if a defendant treated a victim with excessive brutality, 50 points should be scored under OV 7 even if the defendant did not intend to substantially increase the victim's fear and anxiety.

We note that after *Hardy* was decided, the Legislature amended MCL 777.37 by eliminating an "or" from in front of "excessive brutality," by adding the comma after "excessive brutality," and adding the words "similarly egregious." 2015 PA 137. Usually, a change in statutory language is presumed to effectuate a substantive change. *People v Arnold*, 502 Mich 438, 479; 918 NW2d 164 (2018). However, here it is clear that the Legislature only intended a stylistic change to improve clarity. See *id.*, see also *Indenbaum v Michigan Bd of Medicine (After Remand)*, 213 Mich App 263, 282; 539 NW2d 574 (1995). In *Hardy*, the Court relied on the fact that the word "or" is a disjunctive. *Hardy*, 494 Mich at 441. However, commas generally demark items in a list, and an "or" before the final item indicates that the entire list is disjunctive. *Caldwell v Chapman*, 240 Mich App 124, 131; 610 NW2d 264 (2000). Thus, the comma and "or" have no effect on the meaning of the statute. This Court has already addressed the addition of the "similarly egregious" language, which is clearly a direct reference to our Supreme Court's holding in *Hardy*. See *Rodriquez*, ___ Mich App at ___ n 3 (slip op at p 3). We need not further address the significance of that language in light of the disjunctive nature of the statute, because the final clause is not at issue in this matter.

The trial court found that a 50-point score was appropriate because defendant's conduct "was enough certainly to substantiate the requirements of OV-7 for egregious conduct designed to substantially increase fear *and* excessive brutality." We need not consider whether the evidence supported a finding that defendant's conduct was designed to substantially increase the victim's fear, because the evidence clearly supports a finding that defendant treated the victim with excessive brutality.

"[E]xcessive brutality means savagery or cruelty beyond even the 'usual' brutality of a crime." *People v Rosa*, 322 Mich App 726, 743; 913 NW2d 392 (2018) (quotation marks and citation omitted). The evidence indicated that the victim was frail and weak from having suffered a series of strokes. The victim sustained at least eight areas of blunt-force trauma to the head that were caused by multiple blows. In addition, the victim's nose had been struck and had flattened against his face. The medical examiner also testified that the victim's injuries were consistent with someone either having smashed the victim's head against the floor or having struck the back of the victim's head as he lay face down on the floor. The victim had multiple areas of bleeding underneath his scalp and on the surface of his brain. The swelling and bruises to defendant's hands and elbows indicated that defendant did not simply strike the victim with his fists. By defendant's own admission, he repeatedly struck the victim as he lay face down on the floor either stunned or unconscious. A preponderance of the evidence supports the trial

court's finding that defendant treated the victim with excessive brutality.  Accordingly, the trial court did not err by assessing 50 points for OV 7, regardless of whether defendant's conduct substantially increased the victim's fear and anxiety during the offense.  See *People v James*, 267 Mich App 675; 705 NW2d 724 (2005).

Affirmed.

/s/ Amy Ronayne Krause
/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto