THE PEOPLE v. AUGUSTUS ARNOLD, ALIAS GEORGE HOUGHTON.

*Evidence—Prisoner's statement on former trial.*

The prisoner's statement in his own defense on a former trial of the same case, may be introduced by the prosecution and shown to be false.

Exceptions to the Recorder's Court of Detroit. Submitted January 22. Decided April 21.

CRIMINAL INFORMATION for larceny from a store in the day time.

Attorney General *Otto Kirchner* for the People.

*George H. Penniman* for respondent.

COOLEY, J. This case comes up on exceptions to the rulings of the Recorder of Detroit, taken on the second trial of the defendant for the crime of larceny, charged to have been committed October 3, 1878. The firm of A. N. Sabin & Co., produce and commission dealers, were the prosecutors, and the theory of the prosecution was that defendant came to their place of business on pretense of making a purchase of flour, and engaged their attention while a confederate committed the larceny. On the first trial the defendant took the stand in his own behalf, and undertook to account for his presence at Sabin's in the following statement: That he lived in Cleveland, Ohio, and had been engaged there, among other things, in shipping cheese to Chicago; that a few days before the time of the alleged offense a gentleman from Buffalo, named Foster, had come to see him to get him to buy apples in Michigan; that he had gone to Chicago on business there, making inquiries as to apples on the way; that he came to Detroit October 1st, 1878, and on the next day he received a letter from his cousin, who was head book-keeper in the firm of

Chandler & Son, on Ontario street, Cleveland, requesting him to make inquiries as to flour in Detroit, and that it was in pursuance of this request that he went to Sabin's and was there at the time of the alleged larceny.

The defendant was convicted on the first trial, but the verdict was set aside, and on the second trial the above statement was put in evidence by the prosecution, with the avowed purpose of following it with evidence that defendant's pretense of business at Sabin's was wholly false. The defendant objected to its introduction, but the objection was overruled.

William Chandler then testified for the prosecution that he had for years been employed by the firm of Chandler & Son, in Cleveland; that in September and October, 1878, he was the head book-keeper of that firm; that he did not know defendant, nor did he ever see him to his recollection; that defendant was not his cousin; that he had never written to defendant in September or October, 1878, or at any other time or place, to inquire from him the price of flour, and that Chandler & Son never dealt in flour at all.

The only question worthy of notice which the record presents, is whether the court erred in admitting in evidence the statement of the defendant on the former trial, and the evidence of Chandler to contradict it. The defendant, on the second trial, made no statement whatever.

It cannot be claimed with any reason that giving in evidence the defendant's statement violates any privilege which the statute confers upon him. He gives evidence in this manner on his own behalf at his option, and is not to be subjected to unfavorable inferences because he withholds it. But when it is in, it is to be treated like any other evidence, and may be contradicted and shown to be false. Defendant has no claim to be protected against the exposure of this falsehood where he indulges in it for his own exculpation. He runs the risk of this exposure when he invents a false defense.

The peculiarity of this case consists in the defendant's statement being put in on the second trial, not by the defendant himself, but by the prosecution. It is not therefore evidence in the case except as the prosecution makes it so, and the prosecution puts it in, not that reliance may be placed upon it, but for the very purpose of showing its falsity. It is proved as a declaration by the prisoner that it may be followed by evidence that he has attempted to deceive and mislead by it. And the question is whether from the statement itself or from the use which was made of it, inferences unfavorable to the prisoner's innocence might rightly be drawn.

It was never doubted that the conduct of a suspected party when charged with a crime may be put in evidence against him when it is such as an innocent man would not be likely to resort to. Thus, it may be shown that he made false statements for the purpose of misleading or warding off suspicion; though these are by no means conclusive of guilt, they may strengthen the inferences arising from other facts. *State v. Williams* 27 Vt. 724; *Rex v. Higgins* 3 C. & P. 603; *Rex v. Steptoe* 4 C. & P. 397. So it may be shown that the accused fled to escape arrest, or broke jail or attempted to do so (*Whaley v. State* 11 Geo. 123), or offered a bribe for his liberty to his keeper (*People v. Rathbun* 21 Wend. 509). These are familiar cases and rest in sound reason. But the case of deliberate fabrication of evidence, or of attempt in that direction, would seem to be still plainer. In *People v. Marion* 29 Mich. 31, 39, an objection to evidence that the defendant had attempted to tamper with a witness and with the jury was thought so manifestly baseless that it could scarcely be made seriously. In *Commonwealth v. Webster*, Bemis' Report 210, anonymous letters written by defendant to mislead the officers were received as bearing upon his guilt. All these attempts to avoid a trial, to evade conviction by frauds•upon the law, or to lead suspicion and investi-

gation in some other direction by false or covert suggestions or insinuations, are so unlike the conduct of innocent men that they are justly regarded as giving some evidence of a consciousness of guilt. They do not prove it, but the jury are entitled to consider and weigh them in connection with the more direct evidence. *Toler v. State* 16 Ohio St. 583, 585.

In this case the prosecution were allowed to show that the defendant had deliberately fabricated a false statement which, if true, would have been sufficient for his full exculpation. What conduct could possibly be more suggestive of guilt? An attempt to escape may be due to fright exclusively; and an effort to direct attention to another may be made in good faith, and in the belief that the other is the guilty person; but this is a deliberate attempt to deceive the court and jury, and while not constituting perjury, because not under oath, it has and was intended to have all the effect of perjury on the case being tried. It betrays a consciousness that unless the jury are made to believe a falsehood, the case against the party is sufficient to convict him, or at least to put him in peril, and it is made when the party has the assistance of counsel, and when he is no longer agitated by the first excitement of the accusation. It presents, therefore, all the evidences which conduct can furnish in any case, that the accused is in a peril from which straightforward and honorable conduct is not likely to relieve him.

Suppose the defendant on the first trial had relied upon an *alibi*, shown by his own evidence, and on the second had gone upon the stand with an admission of his presence, but with some excuse; shall the prosecution be precluded from showing how he has undertaken by his own evidence to prove inconsistent defenses? It seems to me that there can be no just or sensible rule of law that can thus shield falsehood, when it is made use of to mislead justice.

The Recorder should be advised to proceed to judgment.

MARSTON, C. J., and GRAVES, J., concurred.

CAMPBELL, J. (dissenting). I do not think it was competent to introduce the statement of Arnold made on a former trial, for the purpose of contradicting it, in the manner allowed in the present case. The statement contains no admission whatever, and the whole of it was exculpatory. The only possible purpose of it was to prejudice the jury by inducing them to believe that the defendant, on a previous trial, had introduced a defense which did not then prevail, and on one point of which the prosecution now contradicts him.

I do not think this practice is either fair or legal. The jury on a second trial have no concern with what was the testimony acted on in a former one. On every trial it is the business of the prosecution to make out a case independently. The law contemplates that before going to trial the prisoner shall be informed of the names of the witnesses to be produced against him, so as to be prepared to controvert their testimony, as well as to show their character and learn of their standing. And no prisoner can be expected to anticipate that a witness will be introduced of whom he has never heard, or that one will be introduced upon a question which is in itself collateral and irrelevant.

When this case was disposed of before, one of the grounds of reversal was that stress had been allowed in the court below to be laid on the failure of the defendant to back up his statement by corroborating proofs. It cannot be seriously contended that a defendant could introduce testimony independently that some one in Ohio had asked him to inquire into the price of flour in Detroit. That would have no legal tendency to show that he had an honest purpose in visiting Sabin's store, any more than failure to show it would prove a dishonest purpose. It is very questionable how far such testimony standing alone could be introduced at all. But this is not very important in view of the shape the case took on the trial.

The only manner in which the fact came up at all was not from any statements which formed part of the *res gestæ*, and not in connection with any admission of any kind, but in denial of the truth of a collateral fact which was introduced in testimony on the first trial by the defendant as part of his own case. I am unable to see why it would not have been just as competent for the prosecution, as a part of his case, to have shown that on the former trial the defendant introduced this same matter, or any other matter by other witnesses, and then contradict those witnesses. What a party does to get up a false defense is as much his act, when he does it by swearing others, as when he makes proof by his own statement. The whole force of the prosecutor's purpose here is to show that the defense in the former case was untrue. Any one would see the absurdity of attempting such a task by showing what the witnesses swore, and then contradicting them. The statement of the defendant cannot stand on any different footing except so far as it amounts to a confession. The result of any such practice would be clearly illegal, and every jury would be allowed to try cases, not on their merits, but on their conjectures as to what may have operated on a former trial in aid or prejudice of justice.

The prisoner, if this witness had been called on any fact in controversy, and he had been notified that such a witness was in the case, might have been prepared to impeach him, or if informed he might be called concerning the Cleveland business, might have prepared himself with testimony which we have already decided he could not be criticised for not producing. The facts sworn to by the contradicting witness had nothing whatever to do with the affirmative case of the prosecution, and might have been either way without showing that the prisoner had any part with the person who stole the money, if it was stolen at all.

The effect of allowing the course taken was practically to cut off the prisoner from his statutory right of making a statement at all. It is impossible not to see that this

was the very thing the prosecution meant to do. Any one can see how useless it would have been for the prisoner to make a statement of any sort when the prosecution had been allowed to anticipate and contradict it, and assail it as a trumped-up story. No ingenious theory can conceal the contrivance—for in my opinion it is nothing else—to cut off a most valuable right.

Evidence that a prisoner has endeavored to tamper with witnesses or others has sometimes been allowed, and may be admissible. How far it is independently admissible is not now important. But I think it would be difficult to find any reason or principle or authority for holding that a prosecution on one trial can introduce as a part of its own case evidence of the untruth of a defense on a former trial. Such a practice would be a novelty in jurisprudence, and I am not prepared to concur in it.