## PEOPLE v STRUNK

Docket No. 107656. Submitted January 10, 1990, at Grand Rapids. Decided June 19, 1990. Leave to appeal applied for.

Karl B. Strunk was convicted of first-degree murder and possession of a firearm during the commission of a felony following a jury trial in Osceola Circuit Court, Lawrence C. Root, J. At all stages of the proceedings against him, defendant sought suppression of a confession made by him to the police during an interrogation by the police shortly after his arrest on the basis that the confession was secured in violation of his right as a juvenile to be immediately taken before the juvenile division of the probate court. The circuit court denied the motion to suppress, holding that the delay in taking the defendant before the probate court had not been used as a tool to extract the confession. Defendant, at the close of the prosecution's proofs, moved for a directed verdict on the basis that premeditation and deliberation had not been proved beyond a reasonable doubt. The motion was denied. Defendant appealed.

The Court of Appeals *held:*

1. Viewing the totality of the circumstances, the trial court erred by admitting the confession on the basis that the delay in bringing the defendant before the probate court was not a tool used to extract the confession. However, reversal of the conviction is not mandated, since admission of the confession can be said to be harmless error in view of the overwhelming evidence against the defendant.

2. Defendant's objection at trial to the admission of the entire confession because of the manner in which it was secured is not sufficient to preserve for appellate review the question whether certain portions of the confession should have been deleted prior to its submission to the jury.

3. Defendant failed to establish any prosecutorial misconduct

References

Am Jur 2d, Appeal and Error §§ 517, 601, 602; Evidence §§ 547, 583, 590; Juvenile Courts and Delinquent and Dependent Children § 35; Trial §§ 219; 548, 551-554

Admissibility of confession or other statement made by defendant as affected by delay in arraignment—modern state cases. 28 ALR4th 1121.

which denied him a fair and impartial trial. The prosecution's use of and comments concerning the photographs which were admitted into evidence were proper. The prosecution did not go beyond the bounds of propriety in the cross-examination of defendant. The prosecution's opening and closing remarks were proper comments upon the evidence and inferences which could be drawn from the evidence.

4. The evidence relative to defendant's statements and actions prior to and following his killing of his father was sufficient to permit a jury finding that defendant had the requisite premeditation and deliberation necessary to convict of first-degree murder. Accordingly, the trial court properly denied the motion for a directed verdict. By the same token, there was sufficient evidence to support the jury's verdict.

Affirmed.

MURPHY, P.J., concurred separately. He, however, would hold that the probate court and the circuit court properly held that, given the totality of the circumstances, defendant's confession was voluntary and the delay in bringing defendant before the juvenile division of the probate court had not been used as a tool to extract the confession. He would affirm.

1. CRIMINAL LAW — INFANTS — ARREST — CONFESSIONS — SUPPRESSION OF EVIDENCE.

A juvenile under the age of seventeen, by mandate of both statute and court rule, must, upon being arrested, be immediately taken before the juvenile division of the probate court or released to a parent; any statement secured from the juvenile during any delay in bringing the juvenile before the court should be suppressed unless, under the totality of the circumstances, it can be said the juvenile's statement was voluntary and that the juvenile's substantial rights had been protected (MCL 712A.14, 764.27; MSA 27.3178[598.14], 28.886; MCR 5.933[C][1]).

2. CRIMINAL LAW — INFANTS — CONFESSIONS — SUPPRESSION OF EVIDENCE — HARMLESS ERROR.

The admission in a criminal trial as an adult of a statement taken from a juvenile under the age of seventeen during a delay in taking the juvenile before the juvenile division of the probate court as mandated by statute and court rule constitutes harmless error where no manifest injustice resulted from admission of the statement because, even without the statement, the evidence against the juvenile was overwhelming.

3. APPEAL — PRESERVING QUESTION — CONFESSIONS.

A motion at trial seeking the complete suppression of a confession on the basis of the means by which the confession was obtained does not preserve for appellate review the question whether specific portions of the confession were objectionable on other grounds and should have been deleted before it was admitted into evidence.

4. PROSECUTING ATTORNEYS — PROSECUTORIAL MISCONDUCT.

The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial.

5. CRIMINAL LAW — DIRECTED VERDICT.

A motion for a directed verdict should be denied where, when the proofs are viewed in a light most favorable to the prosecution, the evidence is sufficient to enable a rational trier of fact to conclude that the elements of the crime were proven beyond a reasonable doubt.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *James L. Talaske,* Prosecuting Attorney, and *J. Ronald Kaplansky,* Assistant Attorney General, for the people.

*Catchick & Dodge* (by *David A. Dodge*), for defendant.

Before: MURPHY, P.J., and HOOD and NEFF, JJ.

PER CURIAM. Defendant was convicted by a jury of first-degree, premeditated murder, MCL 750.316; MSA 28.548, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). The mandatory sentences for both crimes were imposed; life in prison without parole for the murder conviction and two years in prison for the firearm conviction.

Defendant appeals as of right and we affirm.

I

The record on appeal shows that defendant is

the only child of parents who were indulgent of his physical wants. His father, in particular, was prone to providing his son with things he would demand, including cars. In fact, it was apparently an attempt to scale back on this sort of indulgence that led to the crimes at issue in this case.

In February, 1987, when defendant was sixteen years old, he and his pregnant girl friend were living with his father. The parents were separated because of marital difficulties. The father informed defendant that the living arrangements would have to change and that defendant and his girl friend would have to move. He also refused defendant's request for assistance in purchasing another vehicle.

On Sunday, February 8, 1987, defendant left the house with a twelve-gauge shotgun. He walked to his father's machine shop where his father was working. The two of them were alone and, according to defendant, they worked on a machine together. Defendant again asked his father for help in buying a vehicle and was rebuffed. The father also told him that he and his girl friend would have to move out of the house.

Defendant testified that he felt "total rejection" as a result of his father's refusal to help him. His response was to pick up the shotgun and use it to shoot his father, once in the back, once in the abdomen. The shot to the abdomen was fatal.

Defendant loaded his father's body in the back of his father's pickup truck. He then decided to put the body into a fifty-five-gallon drum, which he welded shut. He spread oil around the floor of the shop to disguise the blood and then disposed of the drum, with the body in it, in a ditch in the woods. The body was discovered the next day by a snowmobiler.

Defendant had the presence of mind to take his

father's wallet and checkbook from the desk in the machine shop. The next day, he used a forged check to buy a truck. He returned the truck the same day because of mechanical difficulties. He then tried to buy another vehicle with another of his father's checks, but the salesman would not take the check without first talking with defendant's father. Defendant then enlisted the help of a friend, who called the automobile dealer pretending to be defendant's father. The dealer refused to close the deal until he could talk to the father in person.

Two days after the murder, defendant's mother gave permission for a police search of the residence and business properties. That same day, defendant was arrested and taken to a state police post where he gave an incriminating statement.

On appeal defendant raises five issues, none of which amounts to error requiring reversal.

II

Defendant contends that his statements, which were made prior to the time the police took him to the probate court, were erroneously admitted into evidence. Defendant was sixteen years old when he was arrested. Prior to the arrest, the officers talked to the local probate judge by telephone. The judge advised the officers that defendant should be questioned only in the presence of his mother. The arrest took place before 1:00 P.M. on a Tuesday. When defendant's mother arrived at the state police post, questioning began. At some point, defendant asked that his mother leave the room, and he then confessed to killing his father and trying to dispose of the body. The confession was tape-recorded.

At all stages of the proceedings against him,

defendant objected to introduction of the statement given after his arrest. In each instance the objection was overruled. This was error, because the statement was obtained in violation of defendant's statutory rights under MCL 764.27; MSA 28.886 and MCL 712A.14; MSA 27.3178(598.14). However, the error was harmless beyond a reasonable doubt.

A

At issue here is the effect of the circumstances under which defendant's statement was obtained by the state police after his arrest.

Under the Code of Criminal Procedure, a juvenile who is arrested must be taken to the juvenile division of probate court "immediately." MCL 764.27; MSA 28.886. Under the Probate Code, a juvenile who is taken into custody and not released to a parent is to be taken "immediately" to probate court.[1] MCL 712A.14; MSA 27.3178(598.14). MCR 5.933(C)(1) requires that, when a juvenile is detained, an officer must "immediately contact the court."

When defendant was arrested, the probate court was contacted, as required by the court rule. However, defendant was not taken immediately to probate court, as the statutes require. Instead, he was taken to the state police post to await the arrival of his mother. After his mother arrived, defendant was interrogated. During this detention and interrogation he gave incriminating statements. There is no doubt that, when defendant was arrested, he was a suspect in his father's murder and the reason for the delay in taking him

---

[1] Prior to April 1, 1989, and at the time of defendant's interrogation, the statutory mandate was to take the juvenile "forthwith" before the court. We do not believe that the change in the statute is significant as it relates to this case.

to probate court was to obtain a statement from him regarding the crime.

**B**

There has been considerable appellate discussion of the effect of violation of the statutory mandate requiring a juvenile to be taken immediately to probate court after arrest, and two lines of authority have emerged to remedy such a violation.

**1**

One line of cases provides authority for a per se rule requiring strict application of the language of MCL 764.27; MSA 28.886. *People v Wolff,* 23 Mich App 550; 179 NW2d 206 (1970); *People v Allen,* 109 Mich App 147; 311 NW2d 734 (1981), lv den 412 Mich 913 (1982). In *Wolff,* two confessions were obtained in violation of the statute, but both were found to be voluntary by the trial court. This Court, in a very brief opinion, reversed, holding that a subsequent finding of voluntariness did not cure the defect occasioned by the failure to take the juvenile defendant *immediately* before the probate court. 23 Mich App 552.

The facts of *Allen* distinguish it from *Wolff* to some extent. However, in discussing the statute and the *Wolff* case, the Court held that whether a juvenile is an accused when questioned is irrelevant and that the requirement is to take *any* juvenile in custody immediately to probate court. 109 Mich App 157.

**2**

The greater weight of authority holds that the admissibility of a juvenile's confession taken in

violation of the strict letter of the statutes and
court rule is to be judged by the totality of the
circumstances under which the statement was
taken. This is not only the prevailing view in
Michigan, but elsewhere in the United States. See
Anno: *Voluntariness and admissibility of minor's
confession,* 87 ALR2d 624.

In *People v Morris,* 57 Mich App 573; 226 NW2d
565 (1975), lv den 394 Mich 751 (1975), cert den
423 US 849; 96 S Ct 90; 46 L Ed 2d 72 (1975), a
two-hour stop at the precinct station during which
a statement was taken was held not to violate the
"immediacy" provision of MCL 764.27; MSA
28.886. In that case, like this one, the defendant's
mother was present and he was advised of his
*Miranda*[2] rights.

*People v Irby,* 129 Mich App 306; 342 NW2d 303
(1983), lv den 418 Mich 951 (1984), represents the
most comprehensive discussion of the totality-of-
the-circumstances test. The Court in *Irby* set out
four criteria by which to judge the circumstances
surrounding the interrogation of a juvenile defen-
dant. The criteria mentioned by the court are: (1)
whether the defendant is adequately advised of the
*Miranda* rights, demonstrates an understanding of
them and knowingly waives them; (2) whether,
and to what degree, the police comply with extra-
procedural safeguards mandated by the juvenile
court rules; (3) whether a parent or adult custo-
dian is present; and (4) the personal background of
the juvenile. 129 Mich App 320. We do not read
*Irby* to suggest that these criteria are mutually
exclusive factors to be considered when reviewing
interrogation of a juvenile.

In *Irby* the Court noted that there had not been
strict compliance with the rules surrounding de-

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694
(1966).

tention of a juvenile, but excused it on the ground that the totality of the circumstances had rendered the defendant's confession voluntary and that the defendant's substantial rights had been protected. 129 Mich App 321.

Two cases since *Irby* have further refined the application of the totality-of-the-circumstances rule. In *People v Jordan*, 149 Mich App 568; 386 NW2d 594 (1986), the Court noted that unreasonable prearraignment delay does not automatically require suppression of statements taken during the delay. 149 Mich App 577. The Court went on to say that where the delay has been used "as a tool to extract the statement" the statement will be suppressed, *even if it was voluntarily given.* 149 Mich App 577.

In *People v Williams*, 163 Mich App 744; 415 NW2d 301 (1987), this Court affirmed the trial court's decision to suppress the juvenile's confession because it found that, under either a per se rule or a totality rule, the defendant's rights had been violated.

3

In the case at hand, we examine the circumstances surrounding defendant's detention, interrogation, and statements. The facts related here are gleaned from the written opinion of the probate judge denying defendant's motion to suppress his statement, from the transcript of the motion hearing before the circuit judge who also denied a motion to suppress and from the transcript of the questioning of defendant at the state police post.

Defendant was at home when he was arrested by the state police who had clearly focused on him as a suspect in his father's death. They had no arrest warrant. The arrest took place about noon

on a weekday when the courts were open. Defendant was placed in a state police cruiser and advised of his *Miranda* rights. He denied any involvement in the death of his father.

At about the same time as defendant's arrest, a state police trooper called the probate judge to notify him of the arrest. The judge was in a court facility no more than forty-five minutes away from where defendant was being detained. The judge "authorized" defendant's detention and cautioned the trooper that defendant should not be questioned until his mother was present.

Defendant was taken to the state police post, and his mother arrived soon afterwards. In the presence of his mother he was again advised of his rights and agreed to talk to police. The questioning was recorded on tape.

Defendant was questioned from 1:27 P.M. until 2:03 P.M., when he requested that his mother leave the room. During this time he denied involvement in his father's death, in spite of suggestions by the officers that physical evidence would implicate him in the crime. He was told that he was only a suspect and not under arrest, although he clearly was not free to leave.

The officers also told defendant that if he killed his father it would "look a lot worse to the Judge" if he continued to deny involvement. They also told him that he was "still technically a kid" and that "if you made a mistake, they usually—I'm sure we can give kids another chance."

One trooper told defendant that it appeared he had killed his father in a fit of anger and that the trooper understood because he, too, had done things in anger. He then went on to say:

> But you've got to say, you know, I made a mistake, I was wrong; Let's get it straightened out,

and we can get it straightened out right this
afternoon. And we're here to help you, believe it
or not.

It was at this point that defendant asked that
his mother leave the room, and the tape recorder
was turned off. While the recorder was off, defen-
dant asked what would happen to him if he had
killed his father. He was told that he could be
tried in juvenile court or in adult court and that
he faced a possible sentence of life in prison.
Defendant then incriminated himself.

At about 2:14 P.M. the tape recorder was turned
on again and defendant again confessed. The inter-
rogation was concluded at about 2:21 P.M.

C

Throughout the proceedings in this case, defen-
dant was advised of his *Miranda* rights and agreed
to waive them. In this sense, his statement was
voluntary. However, the voluntary nature of his
discussion with state police troopers is undercut by
the violation of his statutory rights and by the fact
that those rights were violated for the express
purpose of obtaining a statement from him about
the crime. Under either the per se rule or totality-
of-the-circumstances test, defendant's statement
should not have been admitted because the delay
in bringing defendant before the probate court was
used as a tool to extract a confession. Despite this,
we find that the admission of the taped statement
against defendant did not amount to error requir-
ing reversal. The other evidence against him was
overwhelming, and the admission of the statement
was harmless beyond a reasonable doubt.

On the day of the killing, defendant told his girl
friend that he was going rabbit hunting and left

the house in a raging snow storm, described as the worst of the winter. He had made vague threats about his father to the girl friend a day or so before. He loaded a shotgun before he left and took it with him. The gun was later found at the victim's place of business where the murder occurred. Defendant's fingerprints were on the gun. A state police firearms expert testified that the wounds which resulted in the victim's death could have been caused by the shotgun found in the shop.

About four hours after leaving the house, defendant returned home, driving his father's truck. He had been expressly denied permission to drive that vehicle. He told his girl friend that he had left the shotgun at the shop. When the police arrived at the house the day after the shooting, defendant began to cry when he told his girl friend that the gun was at the shop and it had his fingerprints on it.

The victim's wallet was found in the truck. Stains in the truck were determined to be human blood of the same blood group as both defendant and his father. Defendant had told his girl friend that the blood in the back of the truck was from a deer his father had struck and killed with the truck.

Paint from a board found in the back of the truck was scientifically consistent with paint from the floor of the victim's shop. Paint from the barrel in which the body was found was scientifically consistent with paint from the tailgate of the truck. Stains on a glove found in the truck and on clothing found in the house were determined to be human blood.

Defendant made two attempts to purchase vehicles with checks taken from his father's business. Both defendant's mother and his girl friend testi-

fied that the handwriting on the checks was that of defendant and not his father. At one point, while he was trying to purchase a vehicle, defendant admitted to his girl friend that his father had not given him the checks. The girl friend also testified that defendant, after the unsuccessful attempts to buy a new vehicle, told her they would leave for California on the following day.

On the day after his arrest, defendant appeared in probate court. He gave a handwritten letter to his girl friend, which she later turned over to the state police. In the letter defendant admitted the crime. He also admitted his guilt to a sheriff's deputy who was on his security detail. Both admissions were unsolicited and unexpected.

At trial, defendant defended only as to the degree of the killing, claiming that he did not kill with premeditation or deliberation. He did not claim that he did not kill his father.

On this record, we find that no manifest injustice resulted from the admission of the statement because, even without the contents of the statement, the evidence against defendant was overwhelming.

III

Defendant also contends that the trial judge erred in permitting defendant's tape-recorded statement to be played in its entirety for the jury to hear. During defendant's interrogation by the police, polygraphic examination was discussed, and defendant's mother made mention of certain hearsay statements by the victim. Defendant objected to the use of the statement at trial on the basis of the means by which it was obtained. However, when it was introduced, he did not specifically object to the polygraph references or hearsay

statements, and he did not ask for any portion of the statement to be redacted before it was played for the jury.

Because defendant failed to object to the procedure used at trial or to request that the statement be redacted, he has failed to preserve this issue for appellate review. *People v Rau,* 174 Mich App 339, 341; 436 NW2d 409 (1989); *People v Dupree,* 128 Mich App 368, 373; 341 NW2d 134 (1983).

IV

Defendant also alleges prosecutorial misconduct in a number of particulars. The test for prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Foster,* 175 Mich App 311, 317; 437 NW2d 395 (1989). We review these issues on a case-by-case basis and must examine pertinent portions of the lower court record to evaluate the prosecutor's conduct and remarks in context. We have reviewed the record and find that defendant's claims of error in this regard are without merit.

A

Defendant first claims that the prosecutor's use of photographs of the deceased was offensive and unfair. We note that the admission of the photographs into evidence was a matter within the trial judge's discretion. *People v Golochowicz,* 413 Mich 298, 322; 319 NW2d 518 (1982). Defendant does not allege abuse of discretion in the admission of the photographs, and we find none.

The prosecutor's use of the photographs was not improper. Citations in defendant's brief to the lower court record show only that the prosecutor introduced the photographs and that they were

received by the trial judge and were then shown to the jury. Various witnesses identified the photographs for the purpose of properly identifying them. There was no inflammatory use of, or comment about, the photographs.

B

Defendant next complains that the prosecutor's cross-examination of him was fundamentally unfair. Our review of the record reveals that the prosecutor cross-examined defendant at length, pointing out inconsistencies in the several accounts defendant had given of the events surrounding his father's death and pushing defendant to admit that he had lied on numerous occasions. However, we do not find that the prosecutor went beyond the bounds of propriety in his questioning of defendant.

This case is distinguishable from *People v Dalessandro,* 165 Mich App 569; 419 NW2d 609 (1988), a case cited by defendant. In *Dalessandro,* this Court held that defense counsel was ineffective and that the prosecutor appealed to the jury to sympathize with the victim. Nothing of that nature is alleged here, and the record does not support a finding that *Dalessandro* applies.

C

Defendant's final claim here is that the prosecutor's opening and closing remarks were unfair. Our review of the record reveals that the prosecutor was doing nothing more than arguing the evidence and the reasonable inferences arising therefrom, and we find no error or prejudice. *People v Sharbnow,* 174 Mich App 94, 100; 435 NW2d 772 (1989), lv den 433 Mich 895 (1989).

V

At the close of the prosecution's proofs, defendant moved for a directed verdict as to first-degree murder. The motion was denied. Defendant now claims that there was insufficient evidence of premeditation and deliberation to allow the first-degree murder charge to go to the jury. We disagree.

In ruling on a motion for directed verdict at the close of the prosecution's proofs, the trial judge must view the evidence in a light most favorable to the prosecution. The motion must be denied if the evidence is sufficient to enable a rational trier of fact to conclude that the elements of the crime were proven beyond a reasonable doubt. *People v Petrella,* 424 Mich 221, 268-270; 380 NW2d 11 (1985); *People v Edwards,* 171 Mich App 613, 618; 431 NW2d 83 (1988), lv den 432 Mich 897 (1989).

Within a day or two before the slaying, defendant told his girl friend that, because his father refused to help him buy another vehicle, he believed that his father hated him and that it was "either him or me." The girl friend took the threat seriously enough to ask defendant about it the next day, but defendant denied that he intended to hurt his father.

On the day of the killing, a bad winter storm was raging. In spite of the storm, defendant loaded a shotgun and told his girl friend that he was going hunting. He did not wear any hunter's orange clothing, even though he had some and knew he should wear it hunting, and he did not display a hunting license, as required.

Defendant shot his father two times with a pump-action shotgun. The shotgun was not a weapon which automatically fired one shot after the other. It required defendant to pull the pump, which ejected the spent casing and injected a fresh

shell. Defendant would then have to aim and fire. This sequence had to be repeated each time defendant fired the weapon.

Defendant's actions after the shooting also suggest a coldly calculated murder. *People v Conklin*, 118 Mich App 90; 324 NW2d 537 (1982). He loaded the body into a drum which he welded shut before he dumped it in a ditch. Within twenty-four hours he was out using forged checks to try to buy a vehicle so that he and his girl friend could leave for California. At the time he was arrested, defendant and his girl friend had already packed their belongings in anticipation of leaving that day.

These facts, of themselves, were sufficient to justify sending the first-degree murder charge to the jury. A reasonable jury could have found from defendant's behavior and words that he went to his father's shop with the intention to kill him.

Because there was sufficient evidence presented to allow a rational trier of fact to find defendant guilty of first-degree murder beyond a reasonable doubt, we hold that the denial of defendant's motion for a directed verdict was proper.

VI

Defendant's final claim on appeal is that there was insufficient evidence from which the jury could properly convict him of first-degree murder. Again, the only elements of the offense contested by defendant are premeditation and deliberation.

The prosecutor must present evidence sufficient to prove each element of the offense beyond a reasonable doubt. On appeal we review the evidence in a light most favorable to the prosecution in determining whether the evidence was sufficient to support the conviction. *People v Hampton*, 407 Mich 354, 368; 285 NW2d 284 (1979), reh den 407

Mich 1164 (1980), cert den 449 US 885; 101 S Ct 239; 66 L Ed 2d 110 (1980); *People v Jackson,* 178 Mich App 62, 64; 443 NW2d 423 (1989).

We point again to the evidence discussed in section v of this opinion. We find it sufficient to support, beyond a reasonable doubt, the jury's finding that defendant was guilty of premeditated, deliberate murder.

Affirmed.

MURPHY, P.J. *(concurring).* I concur in affirming defendant's conviction. The circuit court made factual findings that this was not a situation "where the delay in bringing the defendant . . . before the Probate Court Juvenile division was used as a tool to extract the confession or inculpatory statement." I am not prepared to say that the trial court clearly erred in this factual finding.

Also, when considering the totality of the circumstances, I would conclude, as did the probate court and the circuit court, that the statement by defendant was voluntary and thus admissible. *People v Irby,* 129 Mich App 306, 315-321; 342 NW2d 303 (1983), lv den 418 Mich 951 (1984).