PEOPLE v MOONEY

Docket No. 144270. Submitted November 15, 1995, at Grand Rapids. Decided April 23, 1996, at 9:00 A.M. Leave to appeal sought.

Brian J. Mooney was convicted by a jury in the Recorder's Court for the City of Detroit, Geraldine Bledsoe Ford, J., of two counts of first-degree criminal sexual conduct. He was sentenced to twelve- to twenty-years' imprisonment for each conviction. The defendant appealed, alleging, in part, that the complainant's testimony regarding her alleged virginity before the rape and the prosecution's repeated references to the complainant's virginity denied him a fair trial.

The Court of Appeals held:

1. The rape-shield statute, MCL 750.520j; MSA 28.788(10), does not prohibit a complainant from testifying regarding her lack of prior sexual activity. There is also no exception permitting evidence of the victim's prior sexual conduct to impeach a showing of the victim's lack of sexual experience.

2. The defendant was not denied his constitutional right to confront the witnesses against him.

3. Evidence that the victim had never before engaged in sexual intercourse was explanative of the way she handled her denial of consent and was relevant and admissible. Any evidence impeaching the victim's claimed chastity would not have been relevant to the question of her consent and would have been more prejudicial than probative.

4. The trial court abused its discretion in admitting into evidence a false exculpatory statement made by a codefendant to his grandmother. The statement constituted hearsay and did not fit within any exception to the hearsay rule. The error, however, was harmless in this case.

5. The trial court did not err in admitting into evidence photographs of the victim's bloody bathroom and towels. The photographs were relevant because they tended to demonstrate that the victim suffered an injury that was not likely the result of consensual sexual intercourse and supported the testimony of a doctor who examined the victim following the event.

6. The defendant was not denied a fair trial by the prosecutor's comments during closing argument.

7. The defendant did not present sufficient mitigating factors to overcome the presumption that his sentence, which was within the sentencing guidelines' recommendation, was proportionate.

8. The trial court properly scored Offense Variable 12 to reflect all the sexual penetrations arising out of the transaction. They need not all have been directly committed by the defendant to support the scoring of the offense variable.

Affirmed.

TAYLOR, P.J., dissenting in part, stated that the majority correctly rejected the defendant's assertion that the testimony regarding the victim's virginity denied him a fair trial, but engaged in faulty reasoning in doing so. The defendant waived any error with regard to the complainant's testimony and the prosecution's references thereto by not objecting in the trial court or attempting to cross-examine the complainant regarding her claimed chastity. The conclusion of the majority that the complainant could testify regarding her lack of prior sexual activity without opening the door to the issue and allowing the defendant to cross-examine the complainant regarding her assertion would result in the denial of the defendant's Sixth Amendment right of confrontation. Where such evidence is purposefully admitted, notwithstanding the prohibition of MRE 404(a)(3), the complainant has declined the protections of the rape-shield statute, MCL 750.520j; MSA 28.788(10). Once such a declination occurs, the right of confrontation allows cross-examination regarding such a claim. A defendant's right of confrontation is abridged when a victim affirmatively testifies on direct examination that she was a virgin and the defendant is not allowed to cross-examine the complainant regarding the claim. Where a victim asserts that she was a virgin in an effort to establish that she did not consent to charged conduct, the Sixth Amendment right of confrontation requires that the defendant be allowed to cross-examine such a claim. The right of confrontation does not permit foreclosing cross-examination of a matter asserted on direct examination.

1. RAPE — RAPE-SHIELD STATUTE — EVIDENCE — COMPLAINANT'S PAST SEXUAL CONDUCT.

   The rape-shield statute does not act as an absolute bar to the admission in a trial for criminal sexual conduct of evidence regarding the complainant's past sexual conduct and provides exceptions that allow a defendant to present certain evidence supportive of a defense concerning specific instances of the complainant's sexual conduct; the statute neither prohibits the complainant from testifying regarding the complainant's lack of prior sexual activity nor

permits evidence of the complainant's prior sexual conduct to impeach a showing of the complainant's lack of sexual experience (MCL 750.520j; MSA 28.788[10]).

2. CONSTITUTIONAL LAW — CROSS-EXAMINATION.

The guarantee under the law of an opportunity for effective cross-examination does not include cross-examination in whatever way and to whatever extent the defendant might wish.

3. CRIMINAL LAW — EVIDENCE — PHOTOGRAPHS.

The admission of photographs as evidence is a matter within the discretion of the trial court; where substantially necessary or instructive to show material facts or conditions, photographs are admissible; the fact that a photograph is more effective than an oral description and, to that extent, likely to excite passion and prejudice, does not render the photograph inadmissible.

4. RAPE — SENTENCES — OFFENSE VARIABLES — CRIMINAL SEXUAL PENETRATIONS.

Criminal sexual conduct Offense Variable 12, regarding criminal sexual penetration, is properly scored based on all penetrations arising out of the transaction, even though not all the penetrations were directly committed by the defendant.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Janet A. Napp*, Assistant Prosecuting Attorney, for the people.

*Stuart G. Friedman*, for the defendant on appeal.

Before: TAYLOR, P.J., and MARILYN KELLY and J. R. COOPER,* JJ.

MARILYN KELLY, J. Defendant appeals as of right from his conviction of two counts of first-degree criminal sexual conduct. MCL 750.520b(1)(f); MSA 28.788(2) (1)(f).

---

* Circuit judge, sitting on the Court of Appeals by assignment.

On appeal, defendant argues that references to the victim's virginity violated the Rape Shield Statute and denied him a fair trial. He argues that the trial court erred in admitting a false exculpatory statement. He asserts error in the admission of photographs depicting the victim's bloody bathroom and towels. He claims that he was denied a fair trial due to the prosecutor's improper statements made during closing argument. Finally, he argues that his sentence was disproportionate and offense variable (OV) 12 was incorrectly scored. We affirm.

I

On August 4, 1990, the victim and three of her friends went to a party where the victim met codefendant, Michael Godfrey. Later in the evening, she willingly went into a bedroom with Godfrey. Godfrey asked her if she wanted to have sex, but she pushed him away saying she did not want to, "especially without protection." The victim acknowledged at trial that her response had been odd. However, she stated that she had never been asked to have sexual intercourse before and did not know the appropriate way to say no.

While the victim and Godfrey were in the bedroom, defendant and another man entered the room. Defendant pinned the victim's hands to the bed while another man removed her shorts and underwear. Godfrey and defendant forced sexual intercourse repeatedly on the victim. She testified that she consented to none of these acts, but that she did not scream or fight back because she was in shock.

Afterwards, Godfrey and defendant each noticed that they had blood on their clothing. Godfrey went

home to change clothes and returned to the party
when he learned that the victim was still in the bed-
room, bleeding. Defendant and Godfrey helped her
walk into the bathroom where she attempted to clean
herself. They then took her to her home. Upon arriv-
ing home, the victim tried to take a shower but felt
dizzy and upset. She lay down in the bathtub on a
towel and fell asleep. When she awoke, she was weak
and dizzy. The telephone rang on several occasions,
but she did not answer it, because she could not get
out of the bathtub.

The next day Charles Warren, the victim's
coworker, volunteered to go to her home when he
learned she was late for work. Warren knocked on
the door and, receiving no answer, entered. He found
the victim in the bathroom, blood on the floor and
three blood-soaked towels. She told Warren that she
had been raped. He called an ambulance.

The victim was taken to the hospital and was
attended by nurse Charlene Oswald, who testified at
trial. She stated that, when the victim arrived at the
hospital, she was extremely pale and covered with
blood from her waist down. Oswald examined the vic-
tim's rectal area which was bruised and swollen. Dr.
Deeb Shaloub, a specialist in obstetrics and gynecol-
ogy, also examined the victim. He testified that the
profuse vaginal bleeding was caused by a deep four-
centimeter tear in the back wall of the vagina.
Shaloub also found that there were recently made
tears at her hymen and bruises on her labia. Shaloub
testified that he had never seen similar injuries as a
result of consensual sexual intercourse, but could not
determine their exact cause. He evaluated the tear in
the victim's vaginal wall as minor in itself, but

because of the loss of blood, Shaloub characterized the injury as major. As a result of blood loss, the victim required a blood transfusion of two pints.

Defendant and Godfrey were tried together at the first jury trial. Godfrey testified that, after several minutes of foreplay, he asked the victim if she wanted to have sex and the victim asked him if he had protection. After indicating that he did, Godfrey proceeded to get a condom, put it on, and have consensual sex with her. Although defendant did not testify at trial, the testimony of the witnesses who testified on his behalf and his closing argument were directed toward establishing a defense of consent. The jury found defendant guilty of two counts of first-degree criminal sexual conduct, but deadlocked with regard to defendant Godfrey, and a mistrial was declared with regard to him. Defendant was sentenced to twelve to twenty years' imprisonment on each count.

II

On appeal, defendant argues that the complainant's testimony and the prosecution's repeated references to the complainant's virginity denied him a fair trial. He claims that the Rape Shield Statute uniformly prohibits the admission of such evidence. MCL 750.520j; MSA 28.788(10). We disagree.

The Rape Shield Statute was designed to protect and shield the sexual privacy of the alleged victim of rape. *People v Arenda*, 416 Mich 1, 10; 330 NW2d 814 (1982); *People v Khan*, 80 Mich App 605; 264 NW2d 360 (1978). It affords no protections to the accused. However, the statute does not act as an absolute bar to the admission of evidence regarding the complain-

ant's past sexual conduct. *People v Hackett*, 421 Mich
338, 348; 365 NW2d 120 (1984). It provides exceptions
that allow a defendant to present certain evidence
supportive of a defense concerning specific instances
of the complainant's sexual conduct. MCL
750.520j(1)(a) and (b); MSA 28.788(10)(1)(a) and (b);
*Hackett, supra.* Should a defendant wish to utilize the
exceptions, however, that defendant must comply
with the notice and offer of proof requirements. MCL
750.520j(2); MSA 28.788(10)(2). Tellingly, there is no
corresponding notice requirement in the statute appli-
cable to a complainant.

Moreover, a careful reading of the plain language of
the statute reveals that a victim is not prohibited from
testifying as to her lack of prior sexual activity. There
is also no exception permitting evidence of the vic-
tim's prior sexual conduct to impeach a showing of
the victim's lack of sexual experience. We conclude
that none should be judicially imposed.

In making this ruling, we recognize that it prevents
a defendant from pursuing lines of questioning that
earlier would have been allowed. Now, the statute
steps in to prevent the admission of evidence whose
inflammatory and prejudicial nature outweighs its
probative value and further abuses victims of sexual
misconduct. To allow the admission of defendant's
cross-examination in this case would fly in the face of
the purpose of the rape shield statute: to protect rape
and sexual assault victims from humiliating public
"fishing expeditions" into their past sexual conduct.

We do not find that the defendant was denied his
confrontation rights. The Legislature has provided for
certain exceptions for cross-examination to preserve
a defendant's rights. Moreover, defendant did not

want to cross-examine the victim to show bias, past false accusations made by the victim, or an ulterior motive for making a false charge. Our Supreme Court recognized that those are situations where the admission of evidence of prior sexual conduct might be necessary to preserve a defendant's confrontation right. *Hackett, supra.* The guarantee under the law of an opportunity for effective cross-examination does not include cross-examination in whatever way and to whatever extent the defendant might wish. *People v Lalone,* 432 Mich 103, 128; 437 NW2d 611 (1989) (ARCHER, J., concurring in part and dissenting in part).

In this case, defendant argues that the evidence that the victim was a virgin was irrelevant. When she testified at trial, the victim stated that when Godfrey got on top of her she held him off with her hand. When he asked her if she wanted to have sex she said "[N]o. Especially not without protection." She then stated that she did not know how to say "no" because she never had to before. She continued that, prior to that date, she had never had sexual intercourse. Godfrey testified that, after he asked the victim if she wanted to have sex, she asked him if he had protection. When he said he had a condom, he put it on and they had sex.

Thus, evidence that the victim had never before engaged in sexual intercourse was explanative of the way she handled her denial of consent, that is, the comment involving "protection." Therefore, it was relevant and admissible. Any evidence impeaching the victim's claimed chastity would not have been relevant to the question of her consent and would have been more prejudicial than probative.

We also note that defendant raises this issue for the first time on appeal. The defense did not attempt to cross-examine or impeach the chastity of the victim, because it was consistent with his theory of the case. Defendant theorized that the victim had consensual sex with defendant and invented the rape story, because she did not want her parents to know that she had sex. She could not hide the fact from her parents because of the nature of her injury. Defendant should not be allowed to use evidence of the victim's virginity at trial and then argue on appeal that the introduction of such evidence denied him a fair trial. To hold otherwise would allow defendant to harbor error as an appellate parachute. *People v Shuler*, 188 Mich App 548, 552; 470 NW2d 492 (1991).

III

Defendant next argues that the trial court erred in admitting a false exculpatory statement that Godfrey made to his grandmother, Marie Matuska. Matuska testified that, when she asked Godfrey why his clothing had blood on it, he responded that it came from someone cut by a broken beer bottle at a party. Defendant objected on grounds that the statement constituted inadmissible hearsay, but the trial court overruled the objection.

An exculpatory statement, where proven false, may be offered as circumstantial evidence of the declarant's guilty conscience and may have independent probative force. *People v Dandron*, 70 Mich App 439, 442; 245 NW2d 782 (1976). Our Supreme Court has long recognized the rationale for allowing such testimony.

[A]ttempts to avoid a trial, to evade conviction by frauds upon the law, or to lead suspicion and investigation in some other direction by false or covert suggestions or insinuations, are so unlike the conduct of innocent men that they are justly regarded as giving some evidence of a consciousness of guilt. They do not prove it, but the jury are entitled to consider and weigh them in connection with the more direct evidence. [*People v Arnold*, 43 Mich 303, 305-306; 5 NW 385 (1880).]

The more recent cases discussing the admission of false exculpatory statements involve statements made either to a law enforcement officer, in an affidavit, or otherwise under oath. See *People v Hoffmann*, 142 Mich 531; 105 NW 838 (1905); *People v Wackerle*, 156 Mich App 717; 402 NW2d 81 (1986); *Dandron, supra*; *People v Johnson*, 4 Mich App 205; 144 NW2d 646 (1966).

We conclude that the trial court abused its discretion in admitting this statement. The explanation Godfrey made to his grandmother does not fit within the purpose or the rationale of the false exculpatory statement rule. He made it to his grandmother rather than to a law enforcement officer or to a court while under oath. Godfrey's statement that he got blood on himself as a result of a cut from a bottle was not necessarily a statement to which an innocent man would not have resorted. *Arnold, supra.*

Even assuming that the victim had consented to sex with Godfrey, it is unlikely that Godfrey would have told his grandmother that the blood on his clothing resulted from sexual intercourse. Moreover, the statement lacks any probative force against defendant, because he did not make it. Therefore, we conclude that the case law permitting admission of false exculpatory statements does not support the admis-

sion of this testimony, especially against defendant who was not the declarant. Godfrey's statement to his grandmother constituted hearsay that did not fit within any exception to the hearsay rule.

However, we find the error to be harmless. *People v Robinson*, 386 Mich 551, 563; 194 NW2d 709 (1972). It was not so offensive to the maintenance of a sound judicial process that it can never be regarded as harmless. *Id.* Furthermore, the evidence of defendant's guilt in this case was overwhelming. It is unlikely that, in its absence, defendant would have been acquitted. Evidence that Godfrey lied about the blood must have had a negligible effect on the jury given the other evidence that defendant's sexual conduct with the victim was not consensual.

IV

Defendant next argues that the admission of photographs of the victim's bloody bathroom and bloody towels was more prejudicial than probative and should have been excluded. We disagree.

The admission of photographs as evidence is a matter within the discretion of the trial court. *People v Strunk*, 184 Mich App 310, 323; 457 NW2d 149 (1990). Where substantially necessary or instructive to show material facts or conditions, photographs are admissible. *People v Hoffman*, 205 Mich App 1, 18; 518 NW2d 817 (1994). The photographs were relevant, because they tended to demonstrate that the victim suffered an injury that was not likely the result of consensual sexual intercourse, and thus, supported Dr. Shaloub's testimony. Personal injury and sexual penetration through force are elements of the crime with which defendant was charged, and the photographs were

instructive with regard to its elements. The fact that a photograph is more effective than an oral description and, to that extent, likely to excite passion and prejudice, does not render the photograph inadmissible. *People v Eddington*, 387 Mich 551, 562-563; 198 NW2d 297 (1972).

We decline to review defendant's assertion that the trial court abused its discretion in admitting a piece of bloody mattress, because defendant failed to object at trial, MRE 103(a)(1); *People v Considine*, 196 Mich App 160, 162; 492 NW2d 465 (1992). Also, the evidence was properly admitted as indicative of the extent of the injury.

v

Defendant next argues that, during her closing argument, the prosecuting attorney made misstatements of fact and assumed facts not in evidence and that those errors inflamed the jury. We disagree.

To preserve for appeal a challenge to statements made by the prosecution, a timely objection to those statements must be made. *People v Gonzalez*, 178 Mich App 526, 534-535; 444 NW2d 228 (1989). No objections were raised during plaintiff's closing argument, and therefore, this issue has not been preserved. Accordingly, this Court must determine whether failure to review would result in a miscarriage of justice. *Hoffman*, 205 Mich App 18. We conclude that defendant was not denied a fair and impartial trial by the prosecutor's comments during closing argument.

While it is clear that the prosecutor misstated the extent of blood loss the victim suffered, the subject was testified to by an expert witness. The trial court

instructed the jury that the statements and arguments of the attorneys were not evidence. The prosecutor's statement that the victim's injury was caused by brute force was a comment based on the evidence. These statements did not result in a miscarriage of justice, and defendant was not denied a fair and impartial trial.

## VI

Defendant further argues that his sentence of 12 to 20 years, although within the guidelines' recommendation, is not proportionate to the offense for which he was convicted. We disagree.

Because defendant was sentenced within the recommendation, his sentence is presumed to be proportionate. *People v Daniel,* 207 Mich App 47, 54; 523 NW2d 830 (1994). He has not presented sufficient mitigating factors to overcome the presumption of proportionality. *People v Eberhardt,* 205 Mich App 587, 590; 518 NW2d 511 (1994).

## VII

Lastly, defendant argues that the trial court erred when it scored offense variable (OV) 12 as if there had been multiple penetrations. We disagree.

This Court's review of guideline scores is extremely limited, and we uphold the scoring decision provided there is evidence to support it. *Hoffman,* 205 Mich App 24. The language of the guidelines and the instructions on OV 12 suggest that an offender should be scored based on all penetrations arising out of the transaction. They need not all have been directly committed by him. The victim's testimony here that there were four criminal sexual penetrations, two

directly attributable to defendant and two attributable to others, is adequate to support the scoring of OV 12.

Affirmed.

J. R. Cooper, J., concurred.

Taylor, P.J. (*concurring in part and dissenting in part*). I concur in the majority's handling of issues I, III, IV, V, VI, and VII. I dissent from certain statements made in the resolution of issue II.

While I believe the majority correctly rejects defendant's assertion that the complainant's testimony that she had been a virgin and the prosecution's references to the complainant's virginity denied him a fair trial, I disagree with its reasoning. I would simply hold that defendant waived any error in this regard because he did not object in the trial court and did not attempt to cross-examine the complainant regarding her claimed chastity. The majority's rejection of defendant's argument, however, contains dicta in its discussion of the rape-shield statute with which I cannot agree.[1]

The majority concludes that a sexual assault victim may testify regarding her lack of prior sexual activity without thereby opening the door to the issue and allowing the defendant to cross-examine the alleged victim regarding such an assertion. I believe such a ruling would constitute a denial of a defendant's Sixth Amendment right of confrontation. Initially, I would note that a sexual assault victim's testimony that she

---

[1] This Court need not consider constitutional issues raised for the first time on appeal. *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 234, n 23; 507 NW2d 422 (1993).

had previously been a virgin would be inadmissible under MRE 404(a)(3),[2] which states:

> *Character evidence generally.* Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
> *          *          *
>
> (3) *Character of victim of sexual conduct crime.* In a prosecution for criminal sexual conduct, evidence of the victim's past sexual conduct with the defendant and evidence of specific instances of sexual activity showing the source of origin of semen, pregnancy, or disease.

See also *State v Butler*, 11 Conn App 673, 683; 529 A2d 219 (1987), where the Connecticut Court of Appeals held that assertion of virginity was not relevant to any material issue in a sexual assault case, and *Johnson v State*, 146 Ga App 277, 281; 246 SE2d 363 (1978), where the court held that testimony on direct examination relating to the chastity of the complaining witness was inadmissible.

Obviously, the error in admitting such evidence would be compounded if the trial court then refused to allow the defendant to challenge such evidence. See *People v Lewis*, 160 Mich App 20, 27-28; 408 NW2d 94 (1987). However, if such testimony is purposefully admitted, notwithstanding the prohibition of MRE 404(a)(3), I would find that the sexual assault victim has declined the protections of the rape-shield statute. Once such a declination occurs, the defendant's Sixth Amendment right of confrontation would

---

[2] The question whether this rule of evidence supersedes the rape-shield statute apparently remains unresolved. See *People v Lalone*, 432 Mich 103, 108; 437 NW2d 611 (1989).

allow cross-examination regarding such a claim. Indeed, such evidence was admissible at common law. *People v Hackett*, 421 Mich 338, 344; 365 NW2d 120 (1984).

The Supreme Court has noted that under certain limited situations exclusion of evidence under the rape-shield statute may unconstitutionally abridge a defendant's right to confrontation. *Hackett, supra.* As examples, the Court noted that evidence involving the complainant's prior sexual conduct must be allowed if it would show bias or an ulterior motive for making a false charge or indicate the victim had made false accusations in the past. *Id.* at 348.

I would similarly hold that a defendant's right to confrontation is abridged when a victim affirmatively testifies on direct examination that she was a virgin unless a defendant is then allowed to cross-examine the complainant regarding the claim.

In *People v Dellabonda*, 265 Mich 486, 499-500; 251 NW 594 (1933), the Michigan Supreme Court described the right of cross-examination as follows:

> One of the elementary principles of cross-examination is that the party having the right to cross-examine has a right to draw out from the witness and lay before the jury *anything tending or which may tend to contradict, weaken, modify or explain the testimony of the witness on direction examination* or which tends or may tend to elucidate the testimony or affect the credibility of the witness. [Emphasis added.]

Enactment of the rape-shield statute reflected the Legislature's determination that, in the overwhelming majority of prosecutions, evidence of a rape victim's sexual conduct with parties other than the defendant is neither an accurate measure of the victim's veracity

nor determinate of the likelihood of consensual sexual relations with the defendant. *People v LaLone*, 432 Mich 103; 437 NW2d 611 (1989); *People v Lucas (On Remand)*, 193 Mich App 298; 484 NW2d 685 (1992). However, when a victim asserts that she was a virgin in an effort to establish that she did not consent to charged conduct, a defendant's Sixth Amendment right of confrontation would require that he be allowed to cross-examine such a claim. *Dellabonda*, *supra*.

While a court can limit cross-examination with respect to matters not testified to on direct examination, MRE 611(b), the Sixth Amendment right of confrontation does not permit foreclosing cross-examination of a matter asserted on direct examination. *Dellabonda*, *supra*. Accord *State v Mastropetre*, 175 Conn 512; 400 A2d 276 (1978), where the Connecticut Supreme Court held that if a complaining witness testifies on direct examination that she had been chaste before the time of the assault, the defendant was clearly entitled to challenge the assertion on cross-examination, and *State v Williams*, 21 Ohio St 3d 33, 36; 487 NE2d 560 (1986), where the Ohio Supreme Court held that if a victim testifies on direct examination that she never consents to sex with men, the probative value of the defendant's proffered testimony to the contrary outweighs any interest the state has via its rape-shield statute in excluding such testimony. See also Tanford & Bocchino, *Rape Victim Shield Laws and the Sixth Amendment*, 128 U Pa L Rev 544, 583 (1980) (prior sexual history of victim is relevant and must be admitted when issue is first raised by the prosecution; once in issue, the defense should be allowed to refute it).